SECOND AMENDED

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM
## TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

THOMAS A. FURMAN,

Inmate # A-189292.
(Enter full name of Plaintiff)

vs.

CASE NO: 4:16cv214MW-CAS
(To be assigned by Clerk)

Dr. HIPOLITO MATOS; MEDICAL DIRECTOR

EBONY O. HARVEY; II SC,

Dr. DANIEL CHERRY; REGIONAL MEDICAL DIRECTOR

Dr. OLUGBENGA OGUNSANWO; ASST. SECRETARY Dept. of HEALTH SERVICES

PAT DOE; UTILIZATION MANAGEMENT

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

LEGAL MAIL
PROVIDED TO WAKULLA CI ANNEX
JUL 13 2016
FOR MAILING

TP

Filed JUL 18'16 USDC FLN 4PM 0210

## I. PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff: Thomas Albert Furman
Inmate Number: A-189292
Prison or Jail: Wakulla Correctional Annex
Mailing address: 110 Melaleuca Drive
Crawfordville, Florida
32327

## II. DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for every Defendant:

(1) Defendant's name: Dr. Hipolito Matos
Official position: Medical Director; Wakulla C.I.
Employed at: Wakulla Correctional Annex
Mailing address: 110 Melaleuca Drive
Crawfordville, Florida 32327

(2) Defendant's name: Ebony O. Harvey
Official position: I SC
Employed at: Dept. of Corrections Main Office
Mailing address: 501 South Calhoun Street
Tallahassee, Florida 32399

(3) Defendant's name: Dr. Daniel Cherry
Official position: Regional Medical Director
Employed at: Dept. of Corrections Main Office
Mailing address: 501 South Calhoun Street
Tallahassee, Florida 32399

(continuation page)

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

4. Dr. Olugbenga Ogunsanwo
   Assistant Secretary, Dept. of Health Services
   Dept. of Corrections Main Office
   501 South Calhoun Street
   Tallahassee, Florida 32399

5. Pat Doe
   Utilization Manager for the Dept. of Corrections
   Dept. of Corrections Main Office
   501 South Calhoun Street
   Tallahassee, Florida 32399

LEGAL MAIL

III.  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.

IV.  **PREVIOUS LAWSUITS**

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.  Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
    Yes( )          No(X)

  1.  Parties to previous action:
      (a)  Plaintiff(s): N/A
      (b)  Defendant(s): N/A
  2.  Name of judge: N/A          Case #: N/A
  3.  County and judicial circuit: N/A
  4.  Approximate filing date: N/A
  5.  If not still pending, date of dismissal: N/A
  6.  Reason for dismissal: N/A
  7.  Facts and claims of case: N/A

  **(Attach additional pages as necessary to list state court cases.)**

B.  Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

    Yes( )          No(X)

  1.  Parties to previous action:
      a.  Plaintiff(s): N/A
      b.  Defendant(s): N/A
  2.  District and judicial division: N/A
  3.  Name of judge: N/A          Case #: N/A
  4.  Approximate filing date: N/A
  5.  If not still pending, date of dismissal: N/A
  6.  Reason for dismissal: N/A

3

7. Facts and claims of case: __N/A__
   __N/A__

**(Attach additional pages as necessary to list other federal court cases.)**

C. Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( )            No(X)

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   a. Plaintiff(s): __N/A__
   b. Defendant(s): __N/A__
2. District and judicial division: __N/A__
3. Name of judge: __N/A__    Case #: __N/A__
4. Approximate filing date: __N/A__
5. If not still pending, date of dismissal: __N/A__
6. Reason for dismissal: __N/A__
7. Facts and claims of case: __N/A__

**(Attach additional pages as necessary to list cases.)**

D. Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( )            No(X)

1. Parties to previous action:
   a. Plaintiff(s): __N/A__
   b. Defendant(s): __N/A__
2. District and judicial division: __N/A__
3. Name of judge: __N/A__    Case Docket # __N/A__
4. Approximate filing date: __N/A__    Dismissal date: __N/A__
5. Reason for dismissal: __N/A__

4

6.   Facts and claims of case: _____N/A_____

_____

(Attach additional pages as necessary to list cases.)

## V. STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes.</u> You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

1. Upon his incarceration in the Dept. of Corrections in March, 2004, the plaintiff was diagnosed with Hepatitis-C, Genotype-1A.

2. Hepatitis-C, Genotype-1A has been designated an extremely virulent strain of the virus to the treatments thereof.

3. Hepatitis-C has been designated a "serious medical need," by both the medical and judicial communities and is considered a condition of urgency, one that may produce death, degeneration, deterioration of bodily organs, extreme pain or physical torture and lingering death.

4. Hepatitis-C has been designated a "Major life Activity", a "handicap", a major bodily function" and "Impairment".

5. Jaundice, loss of vision, cirrhosis (a massive scarring of the liver) and organ deterioration and degeneration follows long-term infection from the Hep-C virus. If Hepatitis-C is left untreated, it will lead to liver failure and cancer of the liver. Absent such proper drug treatment or a liver transplant, a person will die a painful and gruesome death.

6. The Dept. of Corrections' Standard level of care criterion has established the liver enzymes (Also known as-"ALT's") quantity at eighty (80) before they are required to initiate the treatment process for Hep-C. On January 28, 2016, the plaintiff's ALT levels were at 279, and is still not being treated.

7. On January 17, 2007, the plaintiff's ALT's were at seventy-nine (79).

8. On January 17, 2007, the plaintiff's Viral Load was at 4,020,000 Iu/ml.

9. On February 14, 2007, Dr. Haridas Bhadja, Medical Director at Okeechobee

5

Correctional Institution initiated the treatment process and recommended that the plaintiff undergo a liver biopsy to determine the progression of the disease. Dr. Bhadja further made an appointment for the plaintiff to be seen by the Department of Corrections' gastroenterological specialist, Dr. Reynaldo Geerken, at the Reception and Medical Center in Lake Butler, Florida for June 8, 2007.

10. On June 8, 2007 plaintiff was informed his ALT's were at eighty-four (84)

11. From June 8, 2007 to present date, the plaintiff has only been seen by seven doctors in reference to his hepatitis-C virus and the treatment thereof. Five of these doctors are Medical Doctors employed by the Department of Corrections, the remaining two are Gastroenterological Specialists hired by the Department of Corrections.

12. On September 14, 2007, the plaintiff was informed his ALT's were at one hundred five (105)

13. Dr. Bhadja had diagnosed the plaintiff with having the Hepatitis-C, genotype-1A virus. In light of the results of the tests given to the plaintiff, Dr. Bhadja recommended and ordered that the plaintiff be given a liver biopsy and begin to receive treatments for the virus. Dr. Bhadja repeated his recommendations and orders several times, and was denied. This is documented

14. Dr. Reynaldo Geerken, Gastroenterological Specialist, also diagnosed the plaintiff with having the Hepatitis-C, genotype-1A virus via his own independant tests given to the patient upon examination, then recommended, ordered and prescribed the plaintiff to undergo a liver biopsy, ultrasound, and begin to receive the treatment regiment for said virus. Dr. Geerken went as far as to order the plaintiff receive the vaccines for both Hepatitis-A and Hepatitis-B as a prerequisite to the criterion for the Hepatitis-C treatment. This is documented

15. The plaintiff received the ultrasound and vaccine injections for Hepatitis-A and Hepatitis-B, but was denied a liver biopsy and the treatments for his Hepatitis-C, even after multiple requests for such submitted by Dr. Geerken.

16. Dr. Nalini Anandjiwalla had diagnosed the plaintiff's condition and after examination of the plaintiff, concurred with Dr. Bhadja and Dr. Geerken regarding the plaintiff's treatment. This is documented

7.

17. Plaintiff was then quickly transferred by the Department of Corrections to their Dade Correctional Institution facility at the opposite end of the state, where the same process was initiated again.

18. Dr. Julio Poveda, Medical Director at Dade Correctional Institution in Homestead, Florida, diagnosed the plaintiff with having the Hepatitis-C, genotype-1A after his own independent examination and battery of test on the plaintiff, then recommended and ordered that the plaintiff receive a liver biopsy and be placed on the treatment regiment for his disease on multiple occasions, each of his requests for such, was denied. This is documented.

19. Dr. Julio Poveda scheduled the plaintiff to see a gastroenterologist.

20. Dr. Juan J. Alberti-Flor, Gastroenterological Specialist, diagnosed the plaintiff with having the Hepatitis-C, genotype-1A virus via independent examination and tests. Dr. Alberti-Flor recommended, prescribed and ordered the plaintiff to undergo an ultrasound, a laparoscopy and treatment regiment. This is documented.

21. On March 30, 2009, in response to a Formal Grievance that was initiated by the plaintiff charging the Department of Corrections and its Medical Department with breach of duty for intentionally and deliberately refusing to treat the plaintiff for his condition and for failing to follow their own doctors' orders; the plaintiff received a response that stated his grievance was approved, and that he was to watch the call-out for a scheduled appointment because he had a liver ultrasound and a laparoscopy pending. The plaintiff received the ultrasound on April 9, 2009, but never received the laparoscopy. This is documented.

22. Plaintiff was quickly shuffled once again by the Department of Corrections to the Suwannee Correctional Institution at the opposite end of the state in Suwannee, Florida, where the same process was reinitiated once again. At which time, eleven months later, the plaintiff was moved once again by the will of the Department of Corrections to the Wakulla Correctional Institution in Crawfordville, Florida, where the process was once again started over.

23. During all of this time, the plaintiff had filed multiple Inmate Requests regarding the status of his condition and the treatment thereof, only to be told to "Access the Sick-call process" if the plaintiff had any questions, at a cost

of $5.00 per visit. This is documented.

24. The plaintiff filed multiple Formal Grievances concerning the Department of Corrections' complete disregard for the plaintiffs' serious medical needs and their Medical Departments knowing and willful decision to treat the plaintiff as recommended, prescribed and ordered by their own physicians. These are documented.

25. Dr. Kozman, diagnosed the plaintiff as having the Hepatitis-C, genotype-1A virus and informed him that his Viral Load was now 25,000,000 ppm via her own independent examination and tests performed on the patient. Dr. Kozman recommended the plaintiff be placed on the treatment regiment and ordered a full battery of bloodwork to be done. This is documented.

26. As of the date of this complaint, Five (5) of the Department of Corrections' own Medical Doctors and two (2) of their own Gastroenterological Specialists have independently tested and examined the plaintiff and diagnosed him to possess the Hepatitis-C, genotype-1A virus. Each of these doctors has recommended, ordered or even prescribed liver biopsies and treatment for the plaintiff's condition, some have done so multiple times. All of them are in agreement and concur on the diagnosis and treatment. There exists no dissension amongst them. They have all shown the plaintiff's serious medical need. Such is all documented.

27. Time and time again, the plaintiff has attempted to discover the reasons behind the Department of Corrections' willful inaction concerning this matter, and has thoroughly exhausted remedy in an attempt to bring relief and resolve to this issue via the Department of Corrections' Grievance Procedure. This is well documented.

28. In response to the recommendations, orders and prescription requests regarding the plaintiff's condition, having been fully informed and advised by their own Medical doctors and Gastroenterological Specialists; the Department of Corrections and its Department of Health Services pondered, evaluated, contemplated, considered and premeditated all of the facts, and opted to hide their head in the sand; avoiding, evading, ignoring and circumnavigating the issue, having done absolutely nothing in response aside from the ordinary and perfunctory bi-annual blood tests. This too, is well documented.

29. The need for medical treatment appears to be mandatory by the Department of Corrections' own doctors, and said treatment should have been obvious, if not automatic in light of their recommendations, yet, the powers that be, having been fully informed, began providing medical care that was so cursory that it amounted to no treatment at all. "Continuously assessing and monitoring a prisoners condition," does not excuse the failure to provide treatment when that treatment has been recommended, ordered or prescribed.

30. The Department of Health Services, via four (4) separate Institutional Medical Departments and their own Medical Centers' doctors' recommendations, prescriptions and Orders, in addition to a plethora of Inmate Requests, Formal Grievances and Appeals, was well advised and made aware, if not fully informed, of all aspects in the plaintiff's case, and failed to carry out said medical orders, failed to act accordingly to the recommendations of their own specialists, failed to administer the medication that was prescribed and ordered, and failed to perform tests that were ordered multiple times by multiple doctors.

31. The Department of Corrections' Health Services, having been sufficiently advised and made aware of the plaintiff's serious medical needs and treatment required, knew they had a duty and were responsible for the plaintiff's care, and did, in fact, knowingly and willfully, intentionally and deliberately withhold the treatment he required to save his life, premeditating their actions and the consequences of doing so.

32. The Department of Corrections' Health Services breached their duty to the plaintiff, knowing that prison authorities must take a prisoner as they find him and provide facilities compatible with his physical condition that meet civilized standards of decency, not avoid, deny and evade their responsibilities. Since prisoners cannot obtain their own medical services, the constitution requires prison authorities to provide them with reasonable or adequate medical care, not delay or refuse them access to treatment that prison doctors have recommended, ordered, or prescribed.

33. On September 22, 2014, During an appointment with Dr. Gaspard, the plaintiff was informed by Dr. Gaspard that:
   A) "Things in the Medical Department are rather hectic sometimes, and things like ordering tests or medication are simply overlooked or slip by without getting done." (Such was stated as an excuse or justification as to

10.

why the medical department was two (2) months late in doing the plaintiff's regularly scheduled blood tests)

B) That "due to the cost of these expensive tests," he was not going to put me in for the tests nor Viral Load test or bloodwork that Dr. Kozman had previously ordered, but merely a simple liver enzyme (ALT) test instead.

C) That the "amount of virus in the bloodstream—doesn't mean anything...," as if it was of no importance.

D) That the Dept. of Corrections Health Services criterion concerning whether or not an inmate receives the treatment for Hepatitis-C, is not based on or judged by the viral load count, but by the liver enzyme (ALT) count. He then went on to explain to the plaintiff that: "The Department of Corrections' Health Services will not begin treatments until your liver begins to show signs of deterioration due to the virus."

They are waiting for the plaintiff's healthy liver to deteriorate before they consider treatment.

34. The fact that the plaintiff's recommended and ordered tests and drug treatment regiments may be expensive, does not excuse prison officials from providing it.

35. Formal Grievances and Appeals have taken up to sixty (60) days to receive a response to. The majority of the responses received by the plaintiff from those in authority regarding this matter either completely avoided responding to the topic of the grievance, or gave some form of bureaucratic response that was no response at all.

36. Plaintiff filed a Formal Grievance on September 9, 2014. To which, Dr. Gaspard states, in his response; "Your liver function lab results (ALT's) are normal—in lieu of a rising Viral Load." This is an oxymoron. A "rising Viral load" is not a "normal" liver function or any other bodily organ's function.

37. Defendant Olugbenga Ogunsanwo, M.D., is the Assistant Secretary of Health Services of the Dept. of Corrections, Florida. In his position, Dr. Ogunsanwo is responsible for the delivery of all medical, dental, mental health and pharmaceutical services to inmates in the Florida prison system, and makes policy under color of state law by determining who is allowed to receive medical care recommended by doctors employed by the Florida Department of Corrections. Defendant O. Ogunsanwo is sued in his official capacity for injunctive relief, filing fees, court fees, and plaintiff's costs and expenses for clerical expenses.

11.

38. Defendants, Dr. Hipolito Matos, Dr. Daniel Cherry, and Ebony O. Harvey have openly admitted on the record that they have carefully evaluated, investigated, and gone over the facts regarding my medical records and case regarding the total lack of care that has deliberately and intentionally been shown regarding the plaintiff's need for medical attention, and have personally denied the plaintiff treatment in addition to standing idly by allowing to the injustice occur, fully aware of the infraction.

39. Defendant, Dr. Daniel Cherry, Regional Medical Director for the Dept. of Corrections in the Northern District, is the Senior doctor over the Region and is responsible for making final decisions in regards to specifically recommended treatment and the Management of the prison medical departments within his designated region. Defendant Cherry is responsible for denying the plaintiff recourse in his grievances, and is sued in his official and individual capacities for injunctive relief, damages, filing fees, court court's costs and plaintiff's clerical expenses.

40. In response to the plaintiff's Formal Grievance and Appeal, defendants Ebony O. Harvey and Dr. Hipolito Matos are on record stating they have carefully investigated and evaluated the records and this case and yet denied the plaintiff recourse or remedy, being aware of the excessive risk to the plaintiff's life, health and safety, lackadaisically disregarding it. Defendants H. Matos and Ebony O. Harvey are personally responsible for denying the plaintiff a standard of Care that could be considered reasonable, adequate or ordinary, doing so after careful premeditation and contemplation. Defendants, H. Matos and E.O. Harvey make decisions under color of state law and are sued in their official and individual capacities for injunctive relief, damages, filing fees, court's costs and plaintiff's clerical expenses.

41. Defendant, "Pat Doe," is employed in the Office of Health Services' "Utilization Management" for the Florida Department of Corrections. (The precise identity of defendant Pat Doe, an employee at Utilization Management, is unknown at this time. Once his or her precise identity is obtain during Discovery, plaintiff will move to amend the complaint and serve the party set forth in this complaint as Pat Doe.)
As an employee of the Office of Health Services' "Utilization Management" for the Florida Department of Corrections, defendant Pat Doe is responsible for determining which inmate is allowed to receive medical care recommended by prison doctors employed by the Department of Corrections. Defendant Pat Doe acts under color of state law. Defendant Pat Doe is sued in his or her official and individual capacities for injunctive relief, damages, filing fees, court's costs and clerical expenses incurred by the plaintiff.

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

42). The Plaintiff's rights under the Eighth Amendment against cruel and unusual punishments have been violated, when upon being well informed concerning the plaintiff's serious medical need, via the recommendations, Orders and prescriptions of the Dept. of Corrections own doctors and specialists, in addition to a plethora of Inmate Requests, Grievances and appeals from the plaintiff, did knowingly, willingly, intentionally and deliberately ignored, delayed, denied and refused to see the plaintiff receive any medical attention at all, knowing his life, health, and safety were at an excessive risk in doing so, and disregarding it.

43. For violating the Plaintiffs' fourteenth Amendment rights by depriving him of life and due process.

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

Enter a temporary, preliminary, and permanent injunctive relief requiring the defendants, and successors in office, to immediately schedule plaintiff for the recommended liver biopsy lapacroscopy and the medication 'Harvoni' regiment for his Hepatitis-C virus, and grant plaintiff compensatory and punitive damages against defendants in an amount to be set by the court.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

7/13/2016
(Date)

Thomas A. Furman
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one): ☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 13 day of July, 20 16.

Thomas A. Furman
(Signature of Plaintiff)

Revised 03/07

13.

Thomas A. Furman - 189290
WAKULLA CI ANNEX
110 MELALEUCA DR.
CRAWFORDVILLE, FL 32327

United States District Court
Northern District of Florida
Office of the Clerk
111 North Adams Street, Ste. 322
Tallahassee, Fla. 32301-7717

LEGAL MAIL

