PROVIDED TO LAKE CI ON 2/28/17 FOR MAILING. BY: [initials] OFFICERS AND INMATES INITIALS

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THOMAS A. FURMAN,

    Plaintiff,

VS.                          CASE NO.: 4:16 CV 214 MW/CAS

DR. HIPOLITO MATOS, et al.,

    Defendants,

_____/

<u>PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT HARVEY'S MOTION TO DISMISS</u>

## TABLE OF CITATIONS

Wright v. Smith, 21 F.3d 496, 502 (2nd Cir. 1994)

Amaker v. Hakes, 919 F. Supp. 127, 131-32 (W.D.N.Y. 1996)

Washington v. Dugger, 860 F.2d 1018, 1020-21 (11th Cir. 1988)

Gill v. Mooney, 824 F.2d 192, 196 (2nd. Cir. 1987)

Estelle v. Gamble, 429 U.S. 97, 103 (1976)

Newman v. Alabama, 559 F.2d 283, 291 (5th Cir. 1978)

Langley v. Coughlin, 888 F.2d 252, 254 (2nd Cir. 1989)

Johnson v. Wright, 412 F.3d 398, 406 (2nd Cir. 2005)

Morales Feliciano v. Calderon Sierra, 300 F. Supp. 2d 321, 341 (DPR. 2004)

Carty v. Farrelly, 957 F. Supp. 727, 737 (D.V.I. 1997)

Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009)

Johnson v. Pearson, 316 F. Supp. 2d 307, 317-18 (E.D. Va. 2004)

Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990)

McKenna v. Wright, 386 F.3d 432, 437-38 (2nd Cir. 2004)

Miller v. King, 384 F.3d 1248, 1263 (11th Cir. 2004)

Farmer v. Brennan, 511 U.S. at 837-47

Nelson v. Prison Health Services, Inc., 991 F. Supp. 1452, 1465 (M.D. Fla. 1997)

Monmouth County Correctional Institution Inmates, v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.)

Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992)

Gil v. Reed, 381 F.3d 649, 660 (7th Cir. 2004)

Sulton v. Wright, 265 F. Supp. 2d 292, 300 (S.D.N.Y. 2003).

## STATEMENT OF THE CASE

This is a § 1983 action filed by an inmate at Lake Correctional Institution seeking Injunctive Relief, in addition to compensatory and punitive damages, based on the Defendant, Ebony Harvey's decision to deny the plaintiff his right to Due Process, denial of Medical care, tests and treatment unanimously and repeatedly recommended, prescribed or ordered by five (5) physicians and two (2) gastroenterological specialists, and for Deliberate Indifference by denying the plaintiff his rights under the Fourteenth and Eighth Amendments.

## STATEMENT OF FACTS OF THE CASE

1. On March 8, 2004, The Broward County, Florida Main Jail verified the fact that the plaintiff tested positive for the Hepatitis-C virus. This is documented; Plaintiff's Exhibit - H1.

2. On March 9, 2004, The Florida Department of Corrections' South Florida Reception Center Medical Department also verified the fact that the plaintiff tested positive for the Hepatitis-C virus. This is documented; Plaintiff's Exhibit - H2.

3. On May 1, 2007, the Florida Department of Corrections' North Florida Reception Center verified that the Plaintiff's Hepatitis-C test further indicated that the Plaintiff possessed - Genotype 1A - Hepatitis-C, which has been designated an extremely virulent strain of the virus to the known treatments thereof; Plaintiff's Exhibit-#3, shows documentation of this.

4. Hepatitis-C (Herein, "HCV"), genotype 1A, has been designated a Serious Medical Need by both the Medical and Judicial communities and is considered a condition of urgency, one that may produce death, degeneration, extreme pain or physical torture and lingering death.

5. The Florida Department of Corrections has a Duty to Care for its inmates and provide Ordinary, Reasonable and Adequate Care for their medical needs.

6. The Criteria set forth in the Department of Corrections in Florida, regarding the treatment for Hepatitis-C inmates, indicates that treatment should begin when an inmate's Liver Enzyme Count (Herein, "ALT's") reaches the eighty (80) mark.

7. On January 18, 2007, Dr. Haridas Bhadja ordered a Liver Biopsy for the plaintiff in preparation for treatment because the plaintiff's

ALT's had reached seventy-nine (79); Plaintiff's Exhibit-G3 shows this medically documented.

8. From this initial request, recommendation and order for a liver biopsy and treatment initiated by Dr. Bhadja, a total of five (5) treating physicians and two (2) gastroenterological specialists have unanimously concurred via independant tests, examinations, diagnoses and study, that the plaintiff should undergo a Liver Biopsy, Laparoscopy, and treatment ("Treatment", meaning a regiment of medication for a period of six (6) or twelve (12) months, not merely "assessing and monitoring" the plaintiff's progression twards death.). All of these physicians and specialists were in complete agreement, none were in dissension; the material record bears this out.

9. Many of these physicians and gastroenterologists had entered multiple recommendations, prescriptions and Orders for Liver Biopsies and treatment, all of which were denied or rejected for reasons unbeknownst to the plaintiff.

10. After All of these physicians and specialists examinations, tests, opinions, diagnosis, bloodwork results, recommendations, evaluations and advise; in addition to their professional insight, intuition, prescriptions and orders, the Department of Corrections and its representitives, agents, officers, administrators, staff members and contractors elected, opted, chose, decided and concluded that the best thing to do, was - nothing. They denied, refused, rejected and disregarded every recommendation, request, prescription and order of their own medical specialists and made a decision to do none of them, after admittedly considering, contemplating, weighing and meditating on them after even more deliberation. They chose, instead, to "assess and monitor" the plaintiff, instead of treating him as their own doctors ordered, on multiple occasions. Such is well documented.

11. The Department of Corrections' administration, representitives, contractors and agents proceeded to mislead, deceive, lie to and confabulate reasons to lead the Plaintiff to believe his treatments were just around the next test or corner. When the Plaintiff cornered them via the grievance procedures, they would transfer the plaintiff so as to start the process all over again to stall, evade, avoid, elude, defer, postpone and buy more time so as to not

treat the plaintiff as their specialist and tending physicians ordered. This is all well documented via the plaintiff's multiple attempts to exhaust remedy in this matter.

12. The Plaintiff has exhausted remedy, patience, beliefs, hopes, and faith in the system, filing the civil action named above in an attempt to fight for his very life.

13. Plaintiff's Exhibits will show a plethora of officials' responses highlighting the political and bureaucratic manner in which the Department of Corrections has manipulated the situation with replies to grievances that are totally unacceptable, in most cases avoiding the issue of the plaintiff's grievance completely, intentionally, deliberately, or with indifference.

14. Fatigue, appetite loss, jaundice, loss of vision, cirrhosis — or a massive scarring of the liver — organ deterioration and degeneration follows long-term infection from the HCV virus. If HCV is left untreated, it will lead to liver failure and cancer of the liver. Absent a liver transplant — that start at $600,000.00 — or proper drug treatment, a person will die a painful and gruesome death.

15. A liver biopsy or laparoscopy, are considered the "gold-standard" for assessing liver disease progression. If an individual with HCV does not have a liver biopsy performed, the disease may progress to a point where treatment for HCV is no longer an option. If not promptly treated, the progression of HCV may lead to liver failure, cancer of the liver, and a gruesome and painful death.

16. Being well familiarized and informed of all of these facts, the defendants in this case have continued to knowingly and willfully deny the plaintiff so much as a liver biopsy to see what condition it is in.

17. Ebony O. Harvey, IISC, was the designated respondent by the Office of the Secretary of the Florida Department of Corrections. As such, Defendant is empowered by the Secretary of the Department of Corrections to act under a color of law in responding to the Plaintiff's grievance and Appeal.

18. Defendant, Ebony O. Harvey admits to carefully evaluating the plaintiff's request for administrative remedy. This is documented.

19. Defendant, Ebony O. Harvey admits to having reviewed all of the records

available to the Office of the Secretary of the Department of Corrections in the process of weighing her decision. This is documented.

20. Defendant, Ebony O. Harvey went as far as to contact the institution and was provided with additional information regarding "the issues" the Plaintiff presented. This too, is documented.

21. Here's the best part...; In her own words, defendant Ebony O. Harvey states: "It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing". NOTE: The Plaintiff's -health care staff- recommended, prescribed and ordered a liver biopsy, laparoscopy, and treatment. Yet, after reviewing the preponderance of material facts, documents and evidence at her disposal, after reviewing them all, and being well familiarized with Florida statutes and codes regarding the Florida Dept. of Corrections, Rules, Regulations, Duty of Care and the responsibility thereof; defendant Ebony O. Harvey, II SC, took a hypocritical stance to her own statement and denied the Plaintiff, knowingly and willingly, the tests and treatment his medical professionals requested. This, is documented.

22. For reasons unbeknownst to the plaintiff, Defendant Ebony O. Harvey, IISC, made the official decision to deny the plaintiff a liver biopsy, Laparoscopy, treatment or recourse in this matter, even though, by her own words, she should have approved it based on the findings and recommendations of the plaintiff's health care staff that she had so vigorously reviewed and evaluated. Defendant, Ebony O. Harvey, under a color of law, made a personal decision to go against the recommendations, opinions, advise and counsel of the plaintiff's medical professionals, in weighing against the plaintiff's best interests in lieu of the Department of Corrections, denying him redress.

## ARGUMENT
## POINT-1
### DEFENDANT HARVEY'S PARTISIPATION

A. On [Doc. 12] pages #1 and #2, the Plaintiff's Second Amended Complaint, the Plaintiff clearly indicates the Defendants title, being - IISC. The Office of the Secretary of the Florida Department of Corrections relegated and deligated the responsibility of responding to the plaintiff's grievance to the

defendant, believing her to be more than capable of responding to the plaintiff's grievance. Defendant Harvey did not refuse the delegation thereof nor did she show any reluctance to due so due to any form of medical ignorance or lack of training. In this case, even a lay-person could easily recognize the necessity of further tests and treatment based on the preponderance of physicians' and specialists' recommendations, prescriptions and orders for such treatment. Many courts have held that a "serious medical need" is: "One that has been diagnosed by a physician as mandating treatment". In this case, several doctors have mandated treatment. Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987). Officials or employees who know or have been told that a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it. Ashcroft v. Iqbal ___ U.S. ___, 129 S.Ct. 1937 (2009), Johnson v. Pearson, 316 F. Supp. 2d. 307, 317-18, (E.D. Va. 2004). Prison personnel may be held liable for their failure to act if it results in a Constitutional violation. Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990), and Estelle v. Gamble, 429 U.S. 97, 106 97 S.ct. 285 (1976)

Correctional Supervisors may be held liable for failing to correct unconstitutional conditions or practices within their area of authority if they knew or should have known about them. Mckenna v. Wright, 386 F.3d 432, 437-38 (2nd Cir. 2004) Miller v. King, 384 F.3d 1248, 1263 (11th Cir. 2004). A prison official can be found deliberately indifferent if — "the official knows of and disregards an excessive risk to an inmate's health and safety." Farmer v. Brennan, 511 U.S. at 837-47, and Nelson v. Prison Health Services, Inc., 991 F. Supp. 1452, 1465 (M.D. Fla. 1997). The fact that a condition or a risk was obvious is circumstantial evidence that will permit a judge or jury to conclude that a defendant did know about it, even if there is no direct evidence about what the defendant knew. However, in this case, there is direct evidence to the fact. Farmer v. Brennan, 511 U.S. at 842-43. Prison officials can be informed sufficiently to hold them liable in several ways. One, is failure to act on a "report or appeal" within the prison system, including a grievance or complaint from a prisoner. Wright v. Smith, 21 F.3d 496, 502 (2d. Cir. 1994), Amaker v. Hakes, 919 F. Supp. 127, 131-32 (W.D.N.Y. 1996)

Prison officials must respond to all of your serious medical needs and not deliberately ignore the medical recommendations of a prisoner's treating physician. Gil v. Mooney, 824 F.2d 192, 196 (2nd Cir. 1987), Johnson v. Wright, 412 F.3d 398, 406 (2d. Cir. 2005). Interfering with the treatment once prescribed [is forbidden by the Eighth Amendment]. Morales Feliciano v. Calderon Sierra, 300 F. Supp. 2d 321, 341 (D.P.R. 2004), Carty v. Farrelly, 957 F. Supp. 727, 737 (D.V.I. 1997). When there is no claim of medical disagreement with specialist's recommendations, failure to follow them should certainly be viewed as Deliberate Indifference. Washington v. Dugger, 860 F.2d 1018, 1020-21 (11th Cir. 1988), Gil v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). Correctional supervisors may be held liable for medical care deprivations if they fail to take steps to provide an adequate medical care system or if they fail to perform Duties assigned to them with the respect to medical care. Hill v. Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992), Miller v. King, 384 F.3d 1248, 1263 (11th Cir. 2004). Officials who set policy, write regulations or give orders may be held liable even if they are not directly involved in enforcing them against the inmate. In this case, defendant Harvey was directly involved, she made the decision. Brock v. Wright, 315 F.3d 158,

165-66 (2nd Cir. 2003).

Non-medical officials are guilty of deliberate indifference when they interfer with doctor's ordered treatment. Gil v. Reed, 381 F.3d 649, 660 (7Th Cir. 2004), Estelle v. Gamble, 429 U.S. 97, 104-05  97 S.Ct. 285 (1976). Non-medical officials intentionally deny or delay access to treatment. Sulton v. Wright, 265 F. Supp. 2d 292, 300 (S.D.N.Y. 2003). A claim that officials "continuously assessed and monitored a prisoner's condition", does not excuse the failure to provide treatment when treatment has been ordered or needed. Mckenna v. Wright, 386 F.3d 432, 437 (2nd Cir. 2004)

Defendant Harvey, under color of law, has a duty to the plaintiff and is responsible for his medical care as a representitive of the Florida Dept. of Corrections under Florida Statute 945.04(1). In denying the plaintiff's grievance, Defendant Harvey is intentionally subjecting the plaintiff to Civil Rights violations and should be held liable. Being a person of ordinary intelligence and prudence, Defendant Harvey should be able to reasonably foresee that a personal injury or further injury to the plaintiff may probably follow from her conduct by denying him medical treatment and tests recommended.

B. The treatment for Hepatitis-C, upon the recommendation of seven (7) medical specialists portends a life-or-death matter. In this case, Defendant Harvey held the Plaintiff's very life in her hands in weighing her decision. Had defendant Harvey approved the Plaintiff's Appeal, the plaintiff would have received the necessary Liver Biopy and Treatment doctors found necessary to keep the plaintiff alive. In this case, being - "one of the individuals who responded to the grievances, denying the requests within" - involves a life-or-death decision.

"Merely signing a grievance...," does even more than create liability, it is evidence of personal involvement and points directly to a guilty party. Had the plaintiff's grievance been a death sentence like some judges must sign, then the same "mere signature" would be ending a man's life. In the case before the bench, the "mere signature" on the grievance denying medical attention, is a death sentence. It is the signature on the grievance that is no "mere" thing, as it and it alone deligates responsibility for the decision. Any judge can tell you..., there is nothing more personal, than placing ones signature on something, for it is the mark or brand of ownership.

It is utterly preposterous to suggest that the defendant, Harvey's participation in this matter is simply "alleged" by the plaintiff, when, in fact, her name and signature, her response and involvement are evidence of it. The plaintiff has "alleged" nothing..., having proven all of his claims via documented records and evidence on exhibit. If "merely signing" something is considered no big deal, defendant Harvey can sign the plaintiff's "End of Sentence" papers.

C.                 CONCLUSION

For the reasons outlined in this Opposition Memorandum, the Defendant, Harvey's Motion to Dismiss, should be dismissed in its entirety, with prejudice.

Dated: February 28, 2017

*Thomas A. Furman*
Thomas A. Furman

Thomas A. Furman - 189292
Lake Correctional Institution
19225 U.S. Hwy 27
Clermont, Fl. 34715-9025

## LOCAL RULE 7.1(E) CERTIFICATE

Undersigned counsel hereby certifies that this opposition Memorandum is in compliance with Local Rule.

## LOCAL RULE 7.1(F) CERTIFICATE

Undersigned counsel hereby certifies that the physical count the undersigned counsel used to prepare this Opposition Memorandum confirms that the entire Opposition contains a total of: 2,305 words.

Dated: February 28, 2017

_Thomas A. Furman_
Thomas A. Furman

Thomas A. Furman - 189292
Lake Correctional Institution
19225 U.S. Hwy 27
Clermont, Fla. 34715-9025

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing Plaintiff's Brief In Opposition to Harvey's Motion to Dismiss has been hand delivered to Lake C.I. mailroom staff for mailing U.S. Mail First Class mail, to: Ana C. Francolin-Dolney, Esq. Fla. Bar #23162, 200 E. Robinson Street, Suite 1140, Orlando, Fl. 32801, Matthew F. Vitale, Esq, Office of the Attorney General, PL-01, The Capitol, Tallahassee, Florida. 32399, on this 28 day of Feb. 20 17.

Respectfully submitted,

_Thomas A. Furman_
Thomas A. Furman, Pro se
DC# 189292
Lake Correctional Institution
19225 U.S. Hwy 27
Clermont, Florida 34715-9025

Thomas Furman- 189294
Lake Correctional Institution
19225 US. Hwy 27
Clermont, Florida 34715

United States District Court
Northern District
Clerk of Court
111 North Adams Street, ste. 322
Tallahassee, Fla 32301-7717