IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION



THOMAS A. FURMAN,

       Plaintiff,

VS.                  Case No. 4:16-cv-214 MW/CAS

DR. HIPOLITO MATOS, et al.,

       Defendants.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, Federal Rules of Civil Procedure, Pro Se Plaintiff,

Thomas A. Furman, moves this Court to grant him Summary Judgment

in this action.

FILED USDC FLND TL
DEC 12 '18 AM 11:26
AH

## TABLE OF CONTENTS

Caption _____ 1.

Table of Contents _____ 2.

Table of Citations _____ 3.

Preliminary Statement _____ 4.

Statement of the Case _____ 4.

Statement of the Facts _____ 5.

Summary of Argument _____ 17.

Argument; Point I _____ 18.

Argument; Point II _____ 20.

Argument; Point III _____ 22.

Argument; Point IV _____ 24.

Conclusion _____ 25

Local Rule 7.1 (F) Certificate

Certificate of Service

## TABLE OF CITATIONS

Estelle v. Gamble, 429 U.S. 97, 107, 97 S. Ct. 285 (1976)

Hill v. Dekalb Regional Youth Det. Center, 40 F.3d 1176, 1187 (11th Cir. 1994)

Brock v. Wright, 315 F.3d 158, 163 (2nd Cir. 2003)

Bragdon v. Abbott, 524 U.S. 624 118 S. Ct. 2196 (1998)

Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987)

Smith v. Carpenter, 316 F.3d 178, 186-89 (2nd Cir. 2003)

Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992)

Farmer v. Brennan, 511 U.S. at 837-42, 114 S. Ct. 1970 (1994)

Johnson v. Wright, 412 F.3d 398, 406 (2nd Cir. 2005)

Greeno v. Daley, 414 F.3d 645, 654-55 (7th Cir. 2005)

Morales Feliciano v. Calderon Serra, 300 F. Supp. 2d 321, 341 (D.P.R. 2004)

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)

Johnson v. Wright, 412 F.3d 398, 406 (2nd Cir. 2005)

Washington v. Dugger, 860 F.2d 1020-21, 1018 (11th Cir. 1988)

Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994)

Zaya v. Sood, 836 F.3d 800-02, (7th Cir. 2016)

McKenna v. Wright, 386 F.3d 432, 437-38, (2nd Cir. 2004)

Palmer v. Corizon, 2017 U.S. Dist. Lexis 26026 (Feb. 24, 2017)

Sulton v. Wright, 265 F. Supp. 2d 292, 300 (S.D.N.Y. 2003)

Farmer v. Brennan, 511 U.S. 825, 828, 834-47, (1994)

Ruffin v. Deperio, 97 F. Supp. 2d 346, 353 (W.D.N.Y. 2000)

Brown v. Johnson, 387 F.3d 1351 (11th Cir. 2004)

Estelle v. Gamble, 429 U.S. 97 S. Ct. 291 (1976)

Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991)

Wright v. Smith, 21 F.3d 496, 50? (2nd Cir. 1994)

Draper v. Harris, 245 Fed. Appx. 699 (Ca. 9. Cal. 2007)

3

## PRELIMINARY STATEMENT

The Plaintiff is claiming that his pain, suffering, and degenerated health is the bi-product of the Deliberate Indifference and malefic medical treatment he experienced by defendants: Thomas E. Reimers, Director of the Department of Health Services, Dr. Daniel Cherry, Regional Medical Director, and Dr. Mintos, Medical Doctor, Wakulla Correctional Institution Annex; for the physical and mental damages incurred by the Plaintiff from their deliberate and intentional countermands, denials and refusals regarding the specific medical treatments, tests, surgical procedures, recommendations, prescriptions and orders given by five (5) medical doctors permenantly employed by the Florida Department of Corrections and two (2) independantly hired Gastroenterologists/Hepatologists, violating the Plaintiff's rights under the Eighth and Fourteenth Amendments.

## STATEMENT OF THE CASE

This is a Civil Rights Action under 42 U.S.C., Section 1983, brought by a State inmate currently incarcerated at: Everglades Correctional Institution, 1599 S.W. 187th Avenue, Miami, Florida 33194.

Plaintiff filed his Second Amended Complaint on July 18, 2016, alleging

inadequate medical treatment and Deliberate Indifference, having exhausted all avenues of the Grievance Procedure, in direct accordance with the Florida Administrative Code, Chapter 33-103, Federal Rules of Civil Procedure, Title 42 U.S.C., Section 1983, Title 42 U.S.C.A., Section 1997E(A), and Title 28 U.S.C., Section 2675(A); outlining the Exhaustion of Remedy procedures. The Plaintiff has received partial relief in this case, via the injunctive relief ordered by United States District Judge, Mark Walker, presiding over case number 4:17-cv-214 MW/CAS – Hoffer, et al., v. Julie L. Jones. The Plaintiff motions for Summary Judgment in this case, seeking the additional remaining Compensatory and Punitive damages relief sought against the defendants in the Second Amended Complaint, to be set by this Court.

<u>MEMORANDUM OF LAW</u>

<u>STATEMENT OF THE FACTS</u>

1. The plaintiff has been diagnosed with chronic hepatitis-c, genotype-1A. Such, is a well documented material fact that cannot be disputed. (See Plaintiff's Exhibits H1-H3).

2. It is a well documented material fact that the plaintiff has undergone

multiple batteries of tests and examinations by five (5) Medical Doctors and two (2) Gastroenterological / Hepatological Specialists, whom have independantly concurred with each others diagnosis, opinions, recommendations, prescriptions and orders. There is no dissenting opinion amongst them. This fact cannot be disputed (See Plaintiff's Exhibits: E-E6, J1-J3, m2, P, P1, P2)

3. Hepatitis-C, genotype-1A, has been designated a - Serious Medical Need-, by both the Medical and Judicial communities and is considered a condition of Urgency, one that may produce death, degeneration, liver damage and deterioration, extreme pain or physical torture, and a gruesome lingering death. It is a condition that has been identified and classified as a- handicap-, in the Federal Rehabilitation Act, and an - impairment- by the American Disabilities Act. Liver function is further identified and classified as a - Major-Bodily Function- and a -Major Life Activity - by the American Disabilities Act for the purposes of the Federal Disabilities Statutes. Such, are genuine facts that cannot be disputed.

4. In an attempt to control and eradicate the hepatitis-C virus, the Medical Community, World Health Organization (W.H.O.), the American Association for the Study of Liver Disease (AASLD), the Infectious Disease Society of America (IDSA), and the Center for Disease Control (C.D.C.) devised a truly simple Standard of Care to combat the hepatitis-C virus. That Standard of Care dictates that everyone with the Hep-C virus should be treated with Direct Acting Antiviral (D.A.A) medications, no matter the stage or level thereof. Such, is a genuine fact that cannot be disputed. (See: "Center for Disease Control, Surveillance for viral hepatitis - United States, 2013, P.I.'s Ex. 17 at 5-6, or Abu-Jamal v. Wetzel, United States District Court for the Middle District of Pennsylvania, 2017, U.S. Dist. Lexis 368, 3:16-cv-2000, January 3, 2017 (decided), Memorandum Opinion, II, 16-21.)

5. It is a well documented fact that the plaintiff's Liver Enzyme Counts and Viral Load Counts had escalated to a point that the plaintiff was considered eligable for the required treatments, having met the criterion thereof. This is a fact that cannot be disputed. (See Plaintiff's Exhibits: G3, G4, G5, I1-I5, and I6).

6. The Department of Health Service's Guide to the Management of Hepatitis, is: Health Services Bulletin 15.03.09. According to page-1 of this bulletin, under ~ II, (D); recommendations by the Center for Disease Control should be followed involving vaccines (See Plaintiff's Exhibit-O, attached)

7. Health Services Bulletin 15.03.09, Supplement No.3, Hepatitis-C Virus Infection Management, Page 3 of 9, #3(A) – states that a liver biopsy as the means of assessing Hepatic Cirrhosis.
   Page 5 of 9, #4(B,C,D,) – indicate that all stages and priority levels be based on a liver biopsy (See Plaintiff's Exhibit-O1)(Attached).
   Health Services Bulletin 15.03.09, itself, states it does not replace a health-care provider's clinical judgment, which, in the plaintiff's diagnosis, consisted of a liver biopsy and regimen of D.A.A. treatment.

8. According to this Health Services Bulletin #15.03.09, page 3 of 9, #3(A): "A liver biopsy is no longer required unless otherwise clinically indicated". In this case, (5) medical doctors and (2) specialists recommended, prescribed, ordered, and even scheduled liver biopsies, which were then all countermanded, denied, or cancelled. (See Plaintiff's Exhibit-O1 (attached) and E1, E2, and m2).

9. Health Services Bulletin #15.03.09, page 8 of 9, #8 - Approval Process: States that the treatment of all genotypes will be coordinated through the Regional Medical Director..., who, in this case, was Dr. Daniel Cherry; whom, for monetary reasons, went against the recommendations, prescriptions, and Orders of these (5) treating/tending physicians and (2) Specialists by cancelling, denying, or refusing to obey their clinical judgments in treating the plaintiff (see Plaintiff's Exhibits-O and O1 attached).

10. Via ultrasound results, plaintiff's liver appeared to be healthy at the time said doctors and Specialists recommended, prescribed, ordered and scheduled liver biopsies and treatment. This is a genuine fact that cannot be disputed. (see Plaintiff's Exhibit-K1, K2).

11. It is a well documented material fact that the plaintiff exhausted remedy on several occasions regarding these denials/refusals of treatment. Such, is a genuine fact that cannot be disputed. (See Plaintiff's Exhibits- F1, F2, G1, G2, D1, D2, D3, A1, A2, C, E7, and L1 [ L1- is attached ] ).

12. Orders for the Preparation of liver biopsies scheduled, then cancelled and denied (see Plaintiff's Exhibits- E1, E2). These are genuine facts that cannot be disputed.

13. As per Florida Administrative Code 33-103.00, (5): "Staff in the Bureau of Policy Management and Inmate Appeals shall have unlimited access to information required to respond to inmate grievances and Appeals. All department employees are required to cooperate with staff in the Inmate Grievance Office by providing accurate and timely information".

On April 10, 2017, the plaintiff filed another grievance Appeal, #17-6-15553, grieving the fact that the plaintiff was still not receiving the liver biopsy nor the treatment regimen that had been recommended, ordered and prescribed. Having all of the historical and current medical information and previous grievance issues at his fingertips, Health Services Director, Thomas E. Reimers responded to the Plaintiff's Appeal by stating that these recommendations, prescriptions and orders were being — "deferred at this time".

Acting with a sufficiently culpable state of mind, such was a well informed, conscious decision made in response to a deadly-serious medical need. The defendant chose to defer life-saving medication, (See Plaintiff's Exhibit-L1), (attached). This genuine fact, cannot be disputed.

14. Director of Health Services, Thomas E. Reimers, upon his own admission, has no medical training. This genuine fact cannot be disputed.

10.

15. In Plaintiff's Institutional Formal Grievance, #1410-118-033, the respondent, Dr. Daniel Cherry, Regional Medical Director, having "stated" he had reviewed and evaluated the plaintiff's medical chart, completely ignored and refused to even respond or take action to the specific allegations put forth in the plaintiff's grievance, that the plaintiff had not even received so much as his regularly scheduled clinic visit for infectious diseases, nor had he had the routine bloodwork / lab tests that monitor his virus for over two (2) months past their due date. Dr. Cherry's response, was to do nothing but avoid the topic. (See plaintiff's Exhibit – C) This is a genuine fact that cannot be disputed.

16. Medical blood test / lab reports and results are entered into an inmates file in chronological Order. On July 6, 2018, Thomas E. Reimers informed his councilor, for the purpose of a Status Update, that the plaintiff's Metavir Stage was an – F2, even though the plaintiff's recorded Metavir Stage taken six months prior to that date, was an – F3, which had made the plaintiff eligable for immediate treatment. Because of his report, the plaintiff did not begin his D.A.A. treatment regimen until August 17, 2018.

The plaintiff has been unable to verify any Metavir Score having been recorded after the January 16, 2018 date.

Here, council for the defense informs this court and its parties in said Status Report, that the defendant, Thomas Reimers, informed her of the Plaintiff's Metavir Score. Such a testimony confirms the fact that Thomas Reimers, who, time and time again states that the plaintiff was religated to a state of constant "monitoring and assessing", has stood by and watched---, as the plaintiff escalated from the Metavir Stage of - F-0, to the "Mild Fibrosis" stage - F1, to the "Moderate Fibrosis" stage - F2, in which liver scarring begins, then into the "Advanced Fibrosis" Stage - F3, which indicates - severe liver scarring, with a score of 0.67, pre - F4, cirrhosis stage, yet, remained in a state of pre-deprivation silence, in which, the plaintiff was intentionally left ignorant of the facts, uninformed, without updates regarding his health or the life-and-death status of a serious medical need. Neither of the defendants or their subordinates once said as much as a peep to the plaintiff regarding his declining health, liver damage and scarring, deterioration or escalating Metavir Scores.

They did not provide treatment, the required tests, Standard of Care, or even counciling to the plaintiff; Knowing all the while that the plaintiff's liver was in a progressive state of scarring, degenerating, damaged and deteriorating well beyond repair, and fully aware of the devistation taking place and what the end results thereof would most likely be. Here, again, the defendants were well aware and continuously updated via their monitoring and assessing, acting with a sufficiently culpable state of mind, Knowing that their silence and Breach of Duty, Care, were the direct cause of the plaintiff's continuing descent towards liver failure, liver cancer, cirrhosis, esophageal varices, ascites, portal hypertension and a list of other extra-hepatic manifestations that lead to death. Here, the defendant's lack of performance, substandard conduct and Breach of Care was, and is, the cause of the plaintiff's liver damage.

17. According to the Plaintiff's January 19, 2018 ultrasound results; "Multiple real time images demonstrate the liver with inhomogeneous echozenicity consistant with fatty infiltration", or, "Steatosis". Upon further investigation, the plaintiff has discovered that his liver was not "fine" or "normal" as council for the defense claimed in the April 16, 2018 Status Report (see Plaintiff's Exhibit - Q3).

Such, is a genuine fact that cannot be disputed.

18. The Infection Disease Control coordinator, Ms Vanessa Veras, Everglades Correctional Institution, Centurion Health Infectious Disease counselor, Ms. Hyatt, and Dr. Ortega, tending/treating physician, Everglades Correctional Institution, were interviewed seperately. When the plaintiff asked each of them to describe what Advanced Fibrosis is; all pointed to a Gilead Corporation wall-chart that depicted the photograph of each of the Metavir Scoring Stages F1-F4 liver damages, pointing to the third frame while stoically intoning — "that, is your liver." The picture showed a sickly-grey, scarred and scabbed liver. Each one then stated in an automaton-like manner, that the liver scarring I was looking at, began at level F2 and progressed up through the F3 stage, was considered severe, and was irreversible, irreparable. What was once a healthy, pink, liver, was now—, this. Such was allowed to be done to me by the defendants, intentionally and deliberately. To know that the plaintiff's health and life were deteriorating like this, and electing, choosing to simply watch the plaintiff's liver become damaged beyond repair, refusing/denying to provide the D.A.A. medication that would stop the plaintiff's spiraling descent into a painful and gruesome death, is utterly incomprehensible and reprehensible.

19. In [Document 142] of this case, dated October 25, 2018, United States District Court Judge, Charles A. Stampelos, gives reference to a parallel case on pages #3 and #4 : Hoffer, et al, V. Julie L. Jones, case number 4:17-cv-214MW/cas, presided over by, United States District Court Judge, Mark Walker. In Document 142, Judge Charles A. Stampelos informs us that, "In an Order entered on November 17, 2017, Judge Walker concluded that the D.O.C. had 'not treated HCV-infected inmates as required by the Constitution'. Id at 1." Judge Stampelos continues to quote at the top of page-4, "The evidence revealed that treatment had not been provided due to a lack of funding." Id at 11. As one of those HCV-infected inmates that Judge Walker refers to, the Court has already concluded that the plaintiff was being denied the recommended, prescribed and Ordered Liver biopsy and treatment for financial reasons, not medical reasons. (See Doc. 142 @ pages 3 and 4).

20. Defendant, Thomas E. Reimers, is the Director of Health Services. As Director, defendant Thomas Reimers is responsible for the delivery of all medical, dental, mental Health and pharmaceutical services to inmates in the Florida prison system. As Director of Health Services, defendant Thomas Reimers makes

policy under color of state law by determining who is allowed to receive medical care recommended by doctors and specialists employed by the Florida Dept. of Corrections.

21. Defendant, Dr. Daniel Cherry, Regional Medical Director for the Dept. of Corrections in the Northern District. As the Regional Medical Director for the region, Dr. Daniel Cherry is the Senior doctor over the Region and is responsible for making final decisions in regards to specifically recommended treatment and the management of the prison medical departments within his designated region. Regional Medical Director, Dr. Daniel Cherry, makes decisions under color of State law

## SUMMARY OF ARGUMENT

The defendants in this case possess a Constitutional Duty to Care for the inmates they are entrusted to incarcerate, due to the fact that said inmates must rely on these prison authorities to treat their medical needs. If these authorities fail to do so, or choose not to do so, those needs will not be met. The plaintiff in this case can prove, via a plethora of medical documents, files and records, that he possessed an extremely dangerous, deadly, and Serious Medical Need. The plaintiff will show, via these same medical documents, files and records, that the defendants in this case were well aware, well informed, and were constantly updated via ongoing monitoring and assessing the plaintiff's Serious Medical need, and chose, elected, opted to deny the recommended, Prescribed, and Ordered forms of treatment of five medical doctors and two Specialists for financial, monetary lack of funding, deciding to bury their heads in the sand and do nothing. The plaintiff will present facts that show the plaintiff's Complaints and Grievances were "carefully evaluated, investigated, reviewed and gone over" by the defendants in addition to the defendants' own admissions stating that they had reviewed the plaintiff's medical records and files, making them fully aware of the plaintiff's serious need.

The plaintiff will present evidence of their direct participation in the alleged
constitutional violations, and the fact that, even after being fully updated and
notified of these violations through a multitude of reports, complaints, grievances
and appeals, the defendants failed to remedy such atrocities or even attempt to
do so. The plaintiff will show that the defendants exhibited deliberate indif-
ference to the rights of the plaintiff by refusing to act upon information indicating
that unconstitutional acts were occurring. The plaintiff will present evidence
showing that the defendants subjected the plaintiff to Civil Rights violations
or knowingly acquiesced to the fact that such was occurring, and the plaintiff
will show the defendants personal involvement in these atrocities.

## ARGUMENT
### POINT ONE
#### Objectively Serious Medical Need

23. Hepatitis-C is considered a Serious Medical Need.

   Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

24. Many courts have held that a – Serious Medical Need – is: "One that has been
diagnosed by a physician as mandating treatment, or one that is so obvious
that even a lay-person would easily recognize the necessity of a doctor's attention."
Hill. v. Dekalb Regional Youth Det. Center, 40 F.3d 1176, 1187, (11$^{Th}$Cir. 1994).

25. The Second Circuit said that a – Serious Medical Need – is: a condition of urgency, one that may produce death, degeneration or extreme pain." The 8th Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetrate pain. Brock v. Wright, 315 F.3d 158, 162. (2nd Cir. 2003)

26. Persons with infectious diseases are considered – handicapped under the Rehabilitation Act, and to have an "impairment" under the American Disabilities Act, as well under "Major Bodily Functions".

Bragdon v. Abbott, 524 U.S. 624, 118 S.ct. 2196 (1998)
Title 42 U.S.C. 12102(2)(A)(B).

27. Liver function may now be a – Major Life Activity – for the purposes of the Federal Disabilities Statutes

Brock v. Wright, 315 F.3d 158, 162. 167 (2nd Cir. 2003)

28. "Medical Need," is serious if it imposes a – lifelong handicap, a "permanent loss" or inmate suffering.

Monmouth County Corr. Inst. inmates v. Lanzaro, 834 F.2d 326, 347, (3rd Cir. 1987).

29. A showing of increased risk, even without presently detectible symptoms, might establish a – Serious Medical Need.

Smith v. Carpenter, 316 F.3d 178, 186-89 (2nd Cir. 2003)

## POINT TWO
### Objectively insufficient response to need.

30. The defendants in this case have admittedly investigated, evaluated, examined, monitored, assessed and went as far as to contact the institution to gather some information. Via F.A.C. Chapter 33-103.001 (5) all information regarding every aspect of the plaintiff's life is made available to the defendants. Through reports, grievances and appeals, the plaintiff has made it perfectly clear as to what his medical needs were, and what was required.

Defendant, Thomas E. Reimers testifies via admission, that his personal response as the Dept. of Health Services Director, was to defer the plaintiff's treatment, in lieu of assuring its fulfillment. Defendant Dr. Daniel Cherry avoided and evaded responding to the plaintiff's grievances and simply denied them. Both defendants knowingly acquiesced and remained silent to the fact that a system of "monitoring and assessing" replaced the doctors and specialists prescribed and ordered treatment and procedures, violating a statutory duty to inquire about such behavior and to be responsible for preventing it.

Hill v. Marshall, 962 F. 2d 1209, 1213-14 (6Th Cir. 1992).

31. The defendants knowingly disregarded an excessive risk to the plaintiff's health

20

and safety, burying their heads in the sand and approving the unconstitutional behavior by electing to allow or permit its continuance.

Farmer V. Brennan, 511 U.S. at 837-40, 114 S.Ct. 1970 (1994)

32. They denied the plaintiff of Hep-C treatments recommended by all of the plaintiff's Treating physicians. Johnson v. Wright, 413 F.3d 398, 406 (2nd Cir. 2005), replacing it with a non-treatment so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the plaintiff's condition. Greene V. Daley, 414 F.3d 645, 654-55 (7 Th Cir. 2005). Interfering with treatment once prescribed is forbidden by the 8Th Amendment. Morales Feliciano V. Calderon Serra, 300 F. Supp. 2d 321, 341 (D. P.R. 2004). Officials who know or have been told that a prisoner is being treated unconstitutionally may be held liable if they fail to do anything about it. Ashcroft V. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).

33. Prison officials must respond to all of the plaintiff's serious medical needs and not deliberately ignore the medical recommendations of the plaintiff's treating physicians and Specialists. Johnson V. Wright, 413 F.3d 398, 406 (2nd Cir. 2005)

34. As there is no claim of medical disagreement with the specialists recommendations, failure to follow them should certainly be viewed as deliberate indifference. Washington V. Dugger, 860 F.2d, 1020-21, 1018 (11Th Cir. 1988).

21

35. The complete denial of readily available treatment for the plaintiff's serious medical need condition constitutes deliberate indifference. Harris V. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). A jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist. The validity of the inference rests primarily on the contemporaneity of the communication and the defendant's decision. Instructions from a specialist are evidence that the defendant knew a particular course of treatment was recommended by at least one other medical professional at the time the defendant chose not to provide that treatment. Zaya V. Sood, 836 F.3d 800-03, (7th Cir. 2016).

<u>POINT THREE</u>
<u>Prevents a prisoner from receiving needed
or recommended medical treatment.</u>

36. When the plaintiff's allegations of improperly denied medical treatment came to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance could not insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility. McKenna V. Wright, 386 F.3d 432, 437-38, (2nd Cir. 2004)

37. The defendant's delay in providing medical care when that medical care was prescribed and ordered exceeds mere negligence when it is apparent that

the delay would detrimentally exacerbate the plaintiff's medical serious

need, the delay did seriously exacerbate the medical problem, and the delay is

subjectional. Palmer v. Carsen, 2017 U.S. Dist. Lexis 26098 (Feb. 24, 2017)

37. the defendants intentionally denied, deferred and delayed access to treatment
Baxter v. Wright, 385 F. Supp. 2d 293, 300 (S.D.N.Y. 2005). Denial or delay

of access to treatment is conduct that may include interference to access medical

personnel or procedures, or failure of medical personnel to deal with the plaintiff's

problem, or to do so timely. McKenna v. Wright, 386 F.3d 432, 437 (2nd Cir. 2004).

38. The defendants were well aware and well informed concerning the plaintiff's

medical condition and did not respond to it in a reasonable manner.

Farmer v. Brennan, 511 U.S. 825, 828, 834-47 (1994). The defendants were

persisting in a course of "treatment" that is ineffective. Ruffin v. Deperio,

97 F. Supp. 2d 346, 353 (W.D.N.Y. 2000)

40. The defendant's complete failure to treat the plaintiff's Hepatitis-C condition

amounts to deliberate indifference. Brown v. Johnson, 387 F.3d 1351 (11th Cir. 2004)

41. A jury can infer a valid claim, under 42 U.S.C., 1983, whether the indifference

was manifested by either of the defendants in their response to the plaintiff's

needs, or by their intentional denial, deferment or delaying access to medical

treatment, or intentionally interfering with the treatment after it was

prescribed. Estelle V. Gamble, 429 U.S. 97, S. Ct. 291 (1976).

<u>POINT FOUR</u>
<u>Actual inference of required medical</u>
<u>treatment from those facts.</u>

42.   The defendant's claim that they, "continuously monitored and assessed" the

plaintiff's condition does not excuse their failure to provide treatment when

the treatment was ordered. McKenna V. Wright, 386 F. 3d 437-38, 433,

43   (2nd Cir. 2004). The fact that the treatment was expensive does not excuse

the defendants from providing it. Harris V. Thigpen, 941 F. 2d 1495, 1509,

44.   (11 Th Cir. 1991). The defendants were informed sufficiently to hold them

liable in several ways; one, is their failure to act on a "report or appeal"

within the prison system, including the grievances from the plaintiff.

Wright V. Smith, 21 F. 3d 496, 502 (2nd Cir. 1994). The denials, deferrals,

and delays in treatment has led to the plaintiff's further and additional

injury. Draper V. Harris, 245 Fed. Appx. 699 (Ca. 9 Cal. 2007). The

45.   defendants may not, with deliberate indifference, to the serious medical needs

of the plaintiff, opt for an easier and less efficacious treatment of the

plaintiff's condition. Sutton v. Wright, 265 F. Supp. 2d 300 (S.D.N.Y. 2003).

CONCLUSION

The evidence shows the plaintiff was denied the recommended, prescribed and ordered treatment, and that such treatment was denied, not for medical reasons, but for financial ones.

Because of said denial and refusal, the plaintiff's liver, that was healthy at the time treatment was ordered, has been allowed to deteriorate and degenerate to the point in which the plaintiff suffers from steatosis, borderline cirrhosis, Advanced Fibrosis accompanied by severe scarring and scabbing of his now sickly-grey liver. As of 2015, the plaintiff has been medicated rather heavily for depression and anxiety, not knowing if his liver will fail today or tomorrow, or....

The liver damage the plaintiff has experienced, thus fare, is irreparable and irreplaceable. The future holds possible liver cancer, liver disease, cirrhosis, hepatic encephalopathy, and a plethora of other extrahepatic manifestations that accompany such liver deterioration. The plaintiff has evidenced the defendants personal decisions to see his treatment denied and deferred. To possess the cure, having a duty to administer it, and choosing not to, in a life or death matter, is murder. The plaintiff seeks summary judgment in this case for his compensatory and punitive damages or a jury trial.

## LOCAL RULE 7.1 (F) CERTIFICATE

Undersigned counsel hereby certifies that the physical method of counting used to prepare this Motion shows that the entire motion contains 3,798 words.

WHEREFORE, The Plaintiff respectfully requests that this honorable court grant the Plaintiff Summary Judgement in this case, and granting such other relief in favor of the Plaintiff as this Court deems proper.

_Thomas A. Furman_

Thomas A. Furman

DATED December 2, 2018

Thomas A. Furman - 189292
Everglades Correctional Inst.
1599 S.W. 187th Ave.
Miami, Fla. 33197

-25-

## UNNOTARIZED OATH

Under the authority of section 92.525, Fla. Stat., and State v. Shearer, 628 So.2d 1102 (Fla. 1994), the defendant makes the following oath under the penalties of perjury:

Under penalties of perjury, I declare that I have read the foregoing motion and that the facts stated in it are true.

Date: _12/2/18_

/s/ _Thomas A. Furman_
Name: _Thomas A. Furman_
DC# _189292_
Everglades Correctional Inst.
1599 S.W. 187th Avenue
Miami, Florida 33194-9000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been placed in the hands of prison officials for mailing by pre-paid U.S. Mail to the Office of _Ms. Damaris E. Reynolds, Asst. Attorney General, Office of the Attorney General PL-01, The Capitol, Tallahassee Fla. and Ana C. Francolin Dolney, 121 S. Orange Ave., Ste. 1500, Orlando, Fla._ on this _2_ day of _Dec._ 2018.

/s/ _Thomas A. Furman_
Name: _Thomas A. Furman_
DC# _189292_
Everglades Correctional Inst.
1599 S.W. 187th Avenue
Miami, Florida 33194-9000

Exhibit- L1

PLAINTIFF's Grievance Appeal

April 10, 2017

Thomas Reimers, Respondent

**PART C - RECEIPT (TO BE COMPLETED BY DC STAFF)**

RECEIVED
APR 2 0 2017
LAKE CI
LAKE MAILROOM

RETURN TO:

| FURMAN, THOMAS | 189292 | 17-6-15553 | | A2147L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

I ACKNOWLEDGE RECEIPT THIS DATE OF A GRIEVANCE FROM THE ABOVE INMATE IN REGARD TO THE FOLLOWING SUBJECT:

07A (GENERAL MEDICAL     (MEDICAL))

| 4/11/17 | 17-6-15553 |
|---|---|
| DATE | GRIEVANCE LOG NUMBER |

JUL 1 2 2017

**PART B - RESPONSE**

| FURMAN, THOMAS | 189292 | 17-6-15553 | LAKE C.I. | A2147L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

In addition, the institution was contacted and they provided this office with information regarding the issues you presented.

Please be advised that your treatment is being deferred at this time.

In the meanwhile, you will continue to be monitored in the chronic illness clinic including diagnostic testing.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

CONFIDENTIAL
THIS DOCUMENT MAY CONTAIN CONFIDENTIAL HEALTH RECORD/ CARE INFORMATION INTENDED FOR THIS ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Tom Reimers
Health Services Director

_____
SIGNATURE AND TYPED OR PRINTED NAME OF
EMPLOYEE RESPONDING

_____
SIGNATURE OF WARDEN, ASST.
WARDEN, OR SECRETARY'S
REPRESENTATIVE

_____
DATE

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED

APR 17 2017

Department of Corrections
Inmate Grievance Appeals

☑ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| FURMAN, Thomas A. | 189292 | Lake Corr. Inst. |
|---|---|---|
| Last    First    Middle Initial | DC Number | Institution |

1716-15553

---

**Part A – Inmate Grievance**

Page 1 of 2

This Appeal is in direct accordance with F.A.C. Chapter 33-103.007(5)(A), 33-103.007, and 33-103.011(1)(c). This Appeal is the final stage, in an attempt to exhaust remedy as per Fed. R. Civ. P., 42 U.S.C.A. Section 1997(e)(A), 42 U.S.C. Section 1983, and 28 U.S.C. 2675(A).

Five (5) Florida Dept. of Corrections' Medical Doctors have recommended, prescribed and ordered a liver biopsy and treatment for my Hepatitis-C.

Two (2) Gastroenterological Specialists employed by the Florida Department of Corrections and Department of Health Services have also recommended, prescribed and ordered a liver biopsy, Laparoscopy, and treatment for my Hepatitis-C.

This same Florida Department of Corrections and Department of Health Services has conspired to deny me said tests and treatment for reasons unknown to me, intentionally failing to carry out said medical orders and recommendations. Being well advised, well informed and completely knowledgeable of the facts, Department of Corrections' and Dept. of Health Services' staff members and administrative personnel have continued to violate my Constitutional, State, and Administrative rights by deliberately interfering with the orders and treatment these doctors and specialists prescribed. Their only response to said orders, recommendations and treatment prescriptions, was the denial thereof.

Mr. Thomas Reimers, having the position of Director of the Dept. of Health Services, was made knowledgeable of all of the facts. Mr. Reimers has been well informed and well advised by his staff in this matter, being in full possession of my medical records and files. There can be no claim of ignorance. In his position as Director of Health Services, Director Reimers acts under a color of state laws.

Director Reimers is responsible for the delivery of all medical, dental, mental health and pharmaceutical services to inmates in the Florida prison system. He makes policy under color of state law by determining who is allowed to receive medical care recommended by doctors employed by the Florida Department of Corrections.

April 10, 2017
DATE

_Thomas Furman_ - 189292
SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

| 1 | |
|---|---|
| # | Signature |

Page 2 of 2

Director Reimers has knowingly and willfully acquiesced in the Unconstitutional behavior of his subordinates, persistantly violating a statutory duty to inquire about such behavior and to be responsible for preventing it, failure to correct it, or failure to change the continued existence of prison conditions which, themselves, are so injurious, discriminant, prejudice or hurtful to prisoners that they amount to constitutional violations.

According to Director Thomas Reimers, I should be given no medical tests, treatment or relief in this matter, even though Director Reimers has never once spoken to me concerning this medical issue, never examined me or interviewed the doctors that have.

Many medical and non-medical professionals have gone on record, stating that medical treatment is up to the discretion of the doctor or the clinician, based on their medical evaluations, as to how a patient should be treated.

Mr. Reimers knowingly, willfully, intentionally and deliberately has chosen to defy all of these medical doctors and specialists orders, recommendations and prescriptions that were given unanimously, yet independantly, in my need for serious medical attention in a life and death situation.

I am grieving the fact that Director Thomas Reimers is acting in a state of deliberate indifference, violating my Administrative, State, and constitutional rights.

Thomas Furman - 189290.      April 10, 2017

Exhibit - m2

Chronological Record of Health Care

Dated: February 26, 2007

From: Michelle Duran, HSAA
      Okeechobee Correctional Institution

Appointment Scheduled with Regional Medical Center for
Gastroenterology liver biopsy appointment.

FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: NKDA

DATE/TIME

2/2/07
1315

Inc Note: Inm to medical via sick call pass Renewed.

L. BARRETT, LPN
OKEECHOBEE C.I.

2/26/07
1313

Inc note: APPT SCHEDULED W/ Rmc FOR Gastroenterology appt. and transport to be set by Rmc Morin clinic. liver Biopsy

MICHELLE DURAN, HSAA
OKEECHOBEE C.I.

03/16/07
TB

INC. NOTE/INMATE TO MEDICAL
FOR YEARLY TB SCREEN
ASYMPTOMATIC FOR TB
SYMPTOMATIC FOR TB

C. TERRAZAS, LPN
OKEECHOBEE C.I.

4/28/07
0945

Inc. Note: - F/u G.I. Clinic

DOCTORS CLINIC: WT 137
T 98.5 P 67 R 20 B/P 108/70

M Quinter
M Jas

Inmate Name Furman Thomas
DC# 169292
Date of Birth 2-29-04
Institution Okeechobee C.I.

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data

Exhibit – O

Health Services Bulletin No. 15.03.09

April 5, 2017

Management of Viral Hepatitis Plan.

I. Purpose: "This protocol does not replace a Health Care
Provider's Clinical Judgement.

II. Action: recommendations of the CDC. ("D")

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES

HEALTH SERVICES BULLETIN NO. **15.03.09**                    Page 1 of 2

SUBJECT: MANAGEMENT OF VIRAL HEPATITIS

EFFECTIVE DATE: 04/05/2017

## I.   PURPOSE:

The purpose of this health services bulletin (HSB) is to provide guidelines for the management of viral hepatitis (type A, B and C) infection in inmates. This protocol does not replace a health care provider's clinical judgment, but serves as a framework upon which to base evaluation and treatment of this disease.

***These standards and responsibilities apply to both Department staff and Comprehensive Health Care Contractor (CHCC) staff.***

## II.   ACTION:

A.   Standard and universal precautions will be utilized at all times when caring for inmates in order to prevent the spread of these and other infections.

B.   Hepatitis A, B, and C will be reported to the Department of Health according to guidelines established by law and Florida Administrative Code which are described in the *Infection Control Manual.*

C.   The infection control program will collect data on new cases of hepatitis A, B, and C according to guidelines described in the *Infection Control Manual.*

D.   Vaccines, when available, will be provided to inmates according to the recommendations of the Centers for Disease Control and Prevention as published in the *Morbidity and Mortality Weekly Report Recommendations and Reports (MMWR).* See each of the supplements for specific information.

E.   Use of AST platelet ratio index (APRI Score) as an alternative to liver biopsy for treatment indication in chronic hepatitis C. APRI is considered a simple and minimal-invasive method to roughly analyze the risk of hepatic fibrosis or in general advanced liver damage. It is the latest minimal-invasive test to be introduced and aims to become a surrogate marker of liver fibrosis in hepatitis C virus (HCV) patients.

F.   **Surveillance of high-risk individuals for Hepatocellular Carcinoma (HCC) is commonly performed using the serum marker alfa-fetoprotein (AFP) often in combination with ultrasonography**

Exhibit - 01

HEALTH SERVICES BULLETIN #15.03.09
SUPPLEMENT No. 3
HEPATITIS C VIRUS INFECTION MANAGEMENT

REVISED APRIL, 2017

- Page 3 of 9 : #3 (A) - Clinically indicated Liver Biopsy
  As a means of assessing for
  Hepatic Cirrhosis,

- Page 5 of 9 : #4 (B, C, and D) - Stages / Priority Levels all
  indicate a fibrosis stages
  based on a liver biopsy result.

- Page's 5 and 6 of 9 : #4 (E) - Other criteria for treatment

- Page 9 of 9 : #8 - Approval Process.

- Quantitative HCV RNA viral load testing to determine if the inmate has active or resolved HCV infection.

C.  Patient Education:

- Inmates with diagnosis of chronic HCV infection should be counseled by a Clinician (preferably during their routine CIC visit) regarding the natural history of the infection, potential treatment options, and specific measures to prevent transmitting HCV infection to others.

3.  Assess for Hepatic Cirrhosis and Decompensation:

Approximatively 50-80% of HCV infections will become chronic; progression of chronic HCV infection to fibrosis and cirrhosis may take years in some patients and decades in others, or in some cases, may not occur at all. Patients with cirrhosis may develop decompensated cirrhosis and/or hepatocellular carcinoma over time.

A.  Assessing for Hepatic Cirrhosis:

Assessing for cirrhosis is important for prioritizing inmates for treatment of chronic HCV infection. Cirrhosis may be diagnosed in several ways:

- Symptoms and signs may include: low albumin or platelets, or prolonged INR, ascites, esophageal varies, and hepatic encephalopathy.
- The APRI score is the preferred method for non-invasive assessment of hepatic fibrosis and cirrhosis. An APRI score ≥ 2.0 may be used to predict the presence of cirrhosis. Inmates with an APRI score ≥ 2.0 should have an abdominal ultrasound performed every 6 months to identify other findings consistent with cirrhosis or hepatocellular carcinoma (HCC).
- Liver biopsy is no longer required unless otherwise clinically indicated
- Abdominal imaging studies such as ultrasound or CT scan may identify findings consistent with or suggestive or cirrhosis, portal hypertension or hepatocellular carcinoma (HCC).

B.  Assessing Hepatic Compensation:

Assessing hepatic compensation is important for determining the most appropriate HCV treatment regimen to be used. The recommended HCV treatment regimen may differ depending on whether the cirrhosis is compensated or decompensated.
The CTP score (Child-Turcotte-Pugh score) is a useful tool to help determine the severity of cirrhosis; it includes five parameters (albumin, bilirubin, INR, ascites,

- Immunosuppressant medication for a comorbid medical condition: current guidelines are inconsistent regarding treatment of HCV infection in this setting: such case will be considered on an individual basis.
- Continuity of care for those already stared on treatment. including inmates who are newly incarcerated in the Department of Corrections.

B.  Priority Level 2 – High Priority for Treatment

- APRI score > 2 with no other clinical findings or cirrhosis.
- Advanced fibrosis on liver biopsy, if one was done.
- HBV co-infection.
- HIV co-infection.
- Comorbid liver disease e.g. autoimmune hepatitis, hemochromatosis, steatohepatitis.
- Stage III Chronic Renal Disease

C.  Priority Level 3 – Intermediate Priority for Treatment:

- Stage 2 fibrosis on liver biopsy, if one was done.
- APRI score 1.5 to < 2
- Diabetes mellitus

D.  Priority Level 4 – Routine for Treatment:

- Stage 0 to stage 1 fibrosis on liver biopsy, if one was done.
- All other cases of HCV infection meeting the eligibility criteria for treatment.

E.  Other Criteria for Treatment:

In addition to meeting the above criteria for priority Level 1 through 4, inmates being considered for treatment of HCV infection should:

- Have no contraindications to, or significant drug interactions with, any component of the treatment regimen.
- Have a GFR > 30.
- Not be pregnant, especially for any regimen that would require Ribavirin or Interferon.
- Have sufficient time remaining on their sentence in the Department of Corrections to complete pre-treatment evaluation and a course of treatment.
- Have a life expectancy > 18 months.

      •   Demonstrate a willingness and an ability to adhere to rigorous treatment regimen and to abstain from high risk activities while incarcerated.

5.   Recommended Treatment Regimens:

Recommendations for HCV treatment regimens continue to evolve, but still depend on several factors: HCV genotype, prior HCV treatment history, and compensated vs. decompensated liver disease.

A.  The most commonly recommended regimens can be obtained at http://www.hcvguidelines.org/ and http://www.hcvguidelines.org/full-report/initial-treatment-hcv-infection

B.  Regimens NOT Recommended:

Regimens not recommended can also be obtained at http://www.hcvguidelines.org/ and http://www.hcvguidelines.org/full-report/not-recommended-regimens-hcv-treatment.

6.   Monitoring

A.  Pre-Treatment Assessment:

Pre-treatment assessment should be accomplished within three months of the projected start of treatment and should include the following:

- Laboratory test including CBC, Pt/INR, liver panel, serum Creatinine, calculated GFR, quantitative HCV RNA viral load sensitive to < 25 IU/ml, HCV genotype, and urine drug screen.
- Calculation of the APRI score using results from the pre-treatment labs. AN APRI score is not needed if there is confirmed cirrhosis.
- Calculation of current CTP score for inmates with known or suspected cirrhosis.
- Assessment for significant drug-drug interactions and current/prior medication adherence.
- Review of history of high-risk behaviors (alcohol/drug possession/use; tattooing.
- For ribavirin-containing regimens: In addition to the above, a pre-treatment EKG is recommended for inmates with pre-existing coronary heart disease.

Contraindications for CTP classes B and C can be obtained at http://www.hcvguidelines.org/ and http://www.hcvguidelines.org/full-report/not-recommended-regimens-hcv-treatment.

C.  Chronic Kidney Disease:

HCV treatment recommendation for patients with Chronic Kidney Disease can be obtained at http://www.hcvguidelines.org/ and http://www.hcvguidelines.org/full-report/unique-patient-populations-renal-impairment-box-summary-recommendations-patients-renal

- Ribavirin doses must be decreased with GFRs < 50. For GFRs 30-50, ribavirin is dosed 200mg alternating every other day with 400mg. For GFR < 30, including hemodialysis, the ribavirin dose is 200mg daily.

D.  Pregnancy

Data are limited on reproductive and fetal effects of HCV DAAs in humans. The FDA lists the current HCV DAAs as Pregnancy Category B (i.e., no evidence of risk), based on studies using animal reproduction models. Current guidelines do not address the use of DAAs for treatment of HCV in pregnancy. Ribavirin is pregnancy Category X and is contraindicated. Although interferon is pregnancy Category C (risk cannot be ruled out). It is usually combined with ribavirin, which is contraindicated. Women of childbearing potential being considered for HCV treatment with a regimen that includes ribavirin should be counseled on the adverse fetal effects of ribavirin and advised not to become pregnant during treatment with ribavirin and for six months after treatment. A negative pregnancy test should be documented prior to starting treatment with ribavirin, monthly during treatment, and for six months after treatment.

8.  Approval Process:

- Treatment of all genotypes will be coordinated through the Regional Medical Director and if applicable, the Hepatitis C program Director in order to determine site and mode of therapy.
- Treatment monitoring, modification and continuation will depend on treatment modality and any complications thereof.
- Inmates previously unsuccessfully treated may be considered for treatment on a case by case basis.

Exhibit - P

Health Services Utilization Management Response

Request For Consult by Dr. Haridas Bhadja for Plaintiff
to be examined by Gastroenterologist for liver biopsy.

Plaintiff is shown to meet the criterion and is accepted.

Dated  6-21-2007

Consults                                                                 Page 1 of 2



# Health Services
## Utilization Management

**Home / Patient Info**    Pending Referrals    Awaiting Scheduling    New    Administration    Reports    Logout

\* denotes required fields

## Consultation

| | |
|---|---|
| * **DC Number:** | 189292 |
| **Last Name:** | FURMAN |
| **First Name:** | THOMAS |
| **Current Institution:** | LAKE C.I. |
| **Tentative Release Date:** | 05/11/2019 |

| | | |
|---|---|---|
| * **Originating Institution:** | | OKEECHOBEE C.I. (404) |
| **Destination Institution:** | | R.M.C.- MAIN UNIT (209) |
| * **Acuity:** | ROUTINE | |
| * **Visit Type:** | FOLLOW-UP | |
| * **Visit Met:** | YES | |
| **Date Consult Requested:** | 6/21/2007 | |
| **Date Consult Received:** | 8/7/2007 | |
| **Target Appointment Date:** | | |
| **Date Consult Scheduled:** | | |
| **Date Consult Refused :** | | |
| **Date Consult Cancelled :** | | |
| * **Type of Service:** | | GE - GASTROENTEROLOGIST |
| * **Place Service Requested:** | | R.M.C.- MAIN UNIT (209) |
| * **Final Place of Service:** | | R.M.C.- MAIN UNIT (209) |
| **Disposition:** | MEETS CRITERIA | |
| * **Status:** | ACCEPTED | |
| **Consult #:** | 521294 | |
| **Consult Request #:** | R00000 | |
| **Authorization Code:** | A00000 | |

**Scheduling Complete:**    ☑

Furman189292.1RFP#4.0018
8/1/2017

Consults                                                          Page 2 of 2

Comments:

```
8/9/07 - F/U GASTRO CLINIC
APPROVED. PLEASE CONTACT RMC
MEDICAL SCHEDULING TO ARRANGE F/U
APPT. DATE WITH DR. GEERKEN.
- JBR/BS
```

Provider(s)

Requesting Physician:  BH05  BHADJA, HARIDAS (BH05)

Performing Physician:  GE44  GEERKEN, REYNALDO (GE44)

[ Save ]  [ Delete ]

___

Diagnosis

| | Diagnosis |
|---|---|
| Remove | (070.51) HEPATITIS C-NO COMA |

Add New Diagnosis Code

[              ]  [ Search ]

___

Procedures

| | Procedure |
|---|---|
| Remove | (89.09) CONSULTATION NOS |

Add New Procedure Code

Code [        ]

( Search for Code:  [ Choose a Procedure Category          ∨ ]  [ ∨ ]  )

Furman189292.1RFP#4.0019
8/1/2017

Exhibit- P1

Health Services Utilization Management Response

Request for Consult By Dr. Julia Poveda for Plaintiff
to be examined by Gastroenterological Specialist

Plaintiffs' condition is shown to be chronic

Relates specific statistics

States Plaintiff meets criteria

Approved by Dr. Thayer  11/18/2008

Request Dated: 10/28/08

Consults

**Health Services**
*Utilization Management*

Home / Patient Info   Pending Referrals   Awaiting Scheduling   New   Administration   Reports   Logout

\* denotes required fields

## Consultation

| | |
|---|---|
| \* DC Number: | 189292 |
| Last Name: | FURMAN |
| First Name: | THOMAS |
| Current Institution: | LAKE C.I. |
| Tentative Release Date: | 05/11/2019 |

\* Originating Institution:  `[        ]` DADE C.I. (463) ⌄

Destination Institution:  `[        ]` DADE C.I. (463) ⌄

\* Acuity:  ROUTINE ⌄

\* Visit Type:  INITIAL ⌄

\* Visit Met:  YES ⌄

Date Consult Requested:  10/28/2008

Date Consult Received:  11/10/2008

Target Appointment Date:  `[        ]`

Date Consult Scheduled:  1/13/2009  📅

Date Consult Refused :  `[        ]`

Date Consult Cancelled :  `[        ]`

\* Type of Service:  `[    ]` GE - GASTROENTEROLOGIST ⌄

\* Place Service Requested:  `[    ]` OUTSIDE FACILITY (OUT) ⌄

\* Final Place of Service:  `[    ]` OUTSIDE FACILITY (OUT) ⌄

Disposition:  MEETS CRITERIA ⌄

\* Status:  ACCEPTED ⌄

Consult #:  557184

Consult Request #:  R10122

Authorization Code:  A0278A

Scheduling Complete:  ☑

Furman189292.1RFP#4.0007
8/1/2017

Consults                                                                 Page 2 of 2

Comments:

```
11/10/2008 REFER TO PA- RB
****************
11/18/2008 APPROVED DR THAYER.
DADE CI TO SCHEDULE APPT DATE.R B
```

Provider(s)
Requesting Physician: ⬆ 463P   PHYSICIAN ON DUTY (463P)
Performing Physician: ⬆ OUTP   UNKNOWN PHYSICIAN (OUTP)

[Save]  [Delete]

Diagnosis

| | Diagnosis |
|---|---|
| Remove | (790.9) ABN BLOOD FINDINGS NEC |
| Remove | (070.51) HEPATITIS C-NO COMA |

**Add New Diagnosis Code**
[_____]  [Search]

Procedures

| | Procedure |
|---|---|
| Remove | (89.09) CONSULTATION NOS |

**Add New Procedure Code**
Code [_____]
( Search for Code: [Choose a Procedure Category ▾]  [▾] )

Furman189292.1RFP#4.0008
8/1/2017

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
CONSULTATION REQUEST/CONSULTANT'S REPORT

| TO Institution:<br>DADE C.I.<br>GE - GASTROENTEROLOGIST | FROM Institution:<br>DADE C.I. | DATE OF REQUEST:<br>10/28/2008 |
|---|---|---|
| Reason(s) for consultation:<br>Evaluate and recommend diagnostic plan ___<br>Evaluate and recommend treatment plan ___<br>Other (specify): | Acuity:<br>ROUTINE | DATE APPOINTMENT MADE:<br><br>Staff Signature:<br><br>APPOINTMENT DATE: |

Follow-up consults require justification

Condition is: Chronic

History of present illness (include onset, presentation, progress, therapy):
44 year old w/m with HEPC + 20yrs
IM requesting treatment

Physical findings:
denied- 4-23-08
    3/28/08
    1/11/08

Diagnostic findings (explain laboratory, x-ray, or other test findings):
10/15/08 ast=34  4/8/08 ast=24  12/14/07 ast=33  6/8/07 ast=41
    alt=60         alt=43          alt=60          alt=84
                                    pt=13.7
                                    inr=1.2

*referred & approved*

Other pertinent information:
7/23/07 ultrasound of the liver

Provisional diagnosis:
ABN BLOOD FINDINGS NEC (790.9)

Health Care Provider Signature/Stamp: _____

CHO/Designee Approval Signature/Stamp: _____

## AUTHORIZATION FOR SPECIALITY EVALUATION

I, the undersigned, have had explained to me and understand that I require _____
which cannot be accomplished at DADE C.I.
I also understand that should hospitalization and/or surgery be necessary, a separate consent form will be signed prior
to such hospitalization and/or surgery. I therefore consent to be referred to a reception and medical center, or such
other health care facility as may be appropriate for the reason(s) stated, and consent to undergo health care services as
may be necessary to evaluate my health status.

Signature of Patient: THOMAS A FURMAN _____  Date: _____

Signature of Witness: _____  Date: _____

IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF
ANY INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name: FURMAN, THOMAS _____
DC# 189292 _____  Race/Sex White/Male _____
Date of Birth 2/20/1964 _____
EOS DATE: 10/ /2021 _____

Exhibit - P2

Health Services Utilization Management Response

Scheduling for examination by Gastroenterologist for liver biopsy

Dated   2-26-07

Consults                                                              Page 2 of 2

Comments:

> OKEECHOBEE CI TO SCHEDULE GASTRO
> APPT DATE. RB
> 2/26/07 - PER DR. BHADJA'S
> REQUEST, THIS I/M'S APPOINTMENT
> WILL BE SCHEDULED WITH A
> GASTROENTEROLOGIST AT RMC.  I/M
> NEEDS EVALUATION FOR LIVER BIOPSY
> WHICH CAN NOT BE ACCOMPLISHED AT
> OKEECHOBEE.  OKEECHOBEE CI TO
> CONTACT RMC MEDICAL SCHEDULING FOR
> APPOINTMENT -
> JBR

**Provider(s)**

**Requesting Physician:** `404P` PHYSICIAN ON DUTY (404P)

**Performing Physician:** `OUTP` UNKNOWN PHYSICIAN (OUTP)

[ Save ]  [ Delete ]

---

Diagnosis

| | Diagnosis |
|---|---|
| Remove | (070.51) HEPATITIS C-NO COMA |

**Add New Diagnosis Code**

`_____`  [ Search ]

---

Procedures

| | Procedure |
|---|---|
| Remove | (89.09) CONSULTATION NOS |

**Add New Procedure Code**

Code `_____`

( **Search for Code:** Choose a Procedure Category ▾   ▾ )

Furman189292.1RFP#4.0021
8/1/2017

PLAINTIFF's Exhibit- Q-2

Bio Reference LAboratories

Dated: January 19, 2018

Dr. Victoria Mesa, Chief Health Officer

Lake Correctional Institution


Metavir Score of 0.67 stage F3

Advanced Fibrosis

# BioReference
LABORATORIES
an **OPKO** Health Company

**FINAL REPORT**

| PHYSICIAN | PATIENT | SAMPLE |
|---|---|---|
| MESA, VIRGINIA<br><br>F7321 - LAKE CORRECTIONAL INST.<br>19225 US HIGHWAY 27,<br>CLERMONT, FL 34715<br>Acct #: (F7321)        FC7<br>P: (352)989-9289 | FURMAN, THOMAS<br>DOB: 02/29/1964  Age: 53 Y Sex: M<br>U/FL:           Bed:<br>Rm:<br>Patient ID:    189292<br>Address:110 MELALEUCA ROAD,<br>         CRAWFORDVILLE, FL 32327<br>P: | Specimen ID: 943064938<br>Date Of Report: 01/19/2018 13:15<br>Date Collected: 01/17/2018 06:35<br>Date Received: 01/17/2018 22:23<br><br><br>*North America  Eastern Time* |

## CLINICAL REPORT

| TEST | RESULT | Abnormal | REFERENCE | UNITS | Rpt Date | PRIOR RESULT | DATE |
|---|---|---|---|---|---|---|---|
| Ketone, Urine | NEGATIVE | | NEGATIVE | | 01/19/18 | NEGATIVE | 09/26/17 |
| Urobilinogen Urine | 0.2 | | 0.2-1.0 | mg/dL | 01/19/18 | 0.2 | 09/26/17 |
| Bilirubin, Urine | NEGATIVE | | NEGATIVE | | 01/19/18 | NEGATIVE | 09/26/17 |
| Blood, Urine | NEGATIVE | | NEGATIVE | | 01/19/18 | NEGATIVE | 09/26/17 |
| Nitrites Urine | NEGATIVE | | NEGATIVE | | 01/19/18 | NEGATIVE | 09/26/17 |
| Leukocyte Esterase | NEGATIVE | | NEGATIVE | | 01/19/18 | NEGATIVE | 09/26/17 |
| Crystals Urine | NONE | | NONE | | 01/19/18 | NONE | 09/26/17 |
| Crystal Amt. Urine | NONE | | NONE | | 01/19/18 | NONE | 09/26/17 |
| WBC, Urine | 0-4 | | 0-4 | PER HPF | 01/19/18 | 0-4 | 09/26/17 |
| RBC, Urine | NONE SEEN | | NONE SEEN | PER HPF | 01/19/18 | NONE SEEN | 09/26/17 |
| Epithelial Cells, Ur | NONE | | NONE-FEW | | 01/19/18 | NONE | 09/26/17 |
| Cast, Hyaline, Urine | 0-4 | | 0-4 | PER LPF | 01/19/18 | 0-4 | 09/26/17 |
| Cast, Granular, Ur | NONE SEEN | | 0-1 | PER LPF | 01/19/18 | NONE SEEN | 09/26/17 |
| Cast, RBC, Urine | NONE SEEN | | 0-1 | PER LPF | 01/19/18 | NONE SEEN | 09/26/17 |
| Bacteria, Urine | NONE | | NONE-FEW | | 01/19/18 | NONE | 09/26/17 |

## -* FIBROTEST - ACTITEST® *--

| TEST | RESULT | | | | Rpt Date | | |
|---|---|---|---|---|---|---|---|
| FIBROSIS SCORE *NJ1 | 0.67 | | | | 01/19/18 | | |
| FIBROSIS STAGE *NJ1 | F3 | | | | 01/19/18 | | |
| FIBROSIS INTERP *NJ1 | advanced fibrosis | | | | 01/19/18 | | |
| INFLAMMATION SCORE *NJ1 | 0.33 | | | | 01/19/18 | | |
| INFLAMMATION STAGE *NJ1 | A1 | | | | 01/19/18 | | |
| INFLAMMATION INTERP *NJ1 | minimal activity | | | | 01/19/18 | | |

FIBROSIS AND NECROINFLAMMATION SCORES AND INTERPRETATIONS

| FibroTest Score | Metavir Score | |
|---|---|---|
| 0.00-0.21 | F0 | no fibrosis |
| 0.22-0.27 | F0-F1 | |
| 0.28-0.31 | F1 | minimal fibrosis |
| 0.32-0.48 | F1-F2 | |
| 0.49-0.58 | F2 | moderate fibrosis |
| 0.59-0.72 | F3 | advanced fibrosis |
| 0.73-0.74 | F3-F4 | |
| 0.75-1.00 | F4 | severe fibrosis |

| ActiTest Score | Metavir Score | |
|---|---|---|
| 0.00-0.17 | A0 | no activity |
| 0.18-0.29 | A0-A1 | |
| 0.30-0.36 | A1 | minimal activity |
| 0.37-0.52 | A1-A2 | |
| 0.53-0.60 | A2 | significant activity |
| 0.61-0.62 | A2-A3 | |
| 0.63-1.00 | A3 | severe activity |

V' Mesa, M.D.
Chief Health Officer
Lake CI

James Weisberger M.D.
Laboratory Director

Exhibit   Q3

February 2, 2018   results

Ultrasound Results

Dr. Willy Noel

MobilexUSA

# ULTRASOUND REPORT

**THIS REPORT IS BASED SOLELY UPON THE ULTRASOUND EXAMINATION.
CORRELATION WITH THE CLINICAL EXAMINATION IS ESSENTIAL.**

**CONFIDENTIALITY NOTICE:** This facsimile (including any accompanying documents) is intended for the use of MobilexUSA or the use of the named addressee(s) to which it is directed, and may contain information that is privileged or otherwise confidential. It is not intended for transmission to, or receipt by, anyone other than the named addressee(s) or person(s) authorized to deliver it to the named addressee(s). If you received this facsimile in error, please report the error by calling the MobilexUSA Privacy Office toll free at 866.686.1717, and providing your name, telephone number and the date. Once you have reported the error, someone from the Privacy Office will contact you within one business day. They may ask you to fax back the information you received so that the company can correct its records and prevent further miscommunication. Please keep the information in a secure place until you are contacted by the Privacy Office and complete the return of the information to that office. Once this is done, please destroy all copies of the mistakenly sent information, without forwarding it. Thank you for your cooperation.

Facility: LAKE CORRECTIONAL INSTITUTION - 24547
   19225 US HWY 27
   CLERMONT, FL  34715-9025

DOS: 02/02/2018
Case: 26086359

Patient: FURMAN, THOMAS
Number: 189292

DOB: 02/20/1964  Age: 53
Room: (MAIN)

Examination:

ABDOMINAL ULTRA LTD (ONE ORGAN

Results: Abdomen Ultrasound Limited:

Technique: Multiple gray scale images of the right upper quadrant of the abdomen were obtained.

Findings: Multiple real time images demonstrate the liver with inhomogeneous echogenicity consistent with fatty infiltration. The portal vein diameter is within normal limits at 9.4 millimeters and the portal vein velocity is within normal limits measuring 22.2 centimeters per second. There is no evidence of a discrete mass within the liver. The gallbladder is seen with no evidence of a calculus. The gallbladder wall is within normal limits. The common bile duct is within normal limits. There is no free fluid to suggest ascites. The inferior vena cava appears within normal limits.

Conclusion: Fatty infiltration of the liver.

Electronically signed by CONSTANTINA LAMPROPOULOS, M.D. 2/2/2018 3:29:05 PM EST.

Report by:   Date: 02/02/2018  Time: 03:29pm ET

*Constantina Lampropoulos, MD*

  CONSTANTINA LAMPROPOULOS,MD/LE

Physician: WILLY NOEL, MD

V. MESA, M.D. CHO
FEB 0 7 2018
LAKE C.I.

Please call 1-800-940-0389, option 2, with any questions regarding this report.

South East Region
13773 ICOT BLVD
CLEARWATER, FL 33760
800.940.0389

Exhibit - Q1

Health Services Bulletin 15.03.09

Q. HCV TREATMENT APPROVAL PROCESS

A determination of the UNOS MELD score will be made for all patients with decompensated cirrhosis. If the score meets the listing/eligibility criteria maintained by the liver transplant centers in Florida, the patient will be referred to the transplant center. Thereafter, co-management as directed by the transplant center will be instituted if the patient is listed for transplant.

## Q. HCV TREATMENT APPROVAL PROCESS

Treatment of all genotypes will be coordinated through the Regional Medical Director and if applicable, the Hepatitis C Program Director in order to determine site and mode of therapy. Patients previously unsuccessfully treated may be considered for treatment on a case by case basis.

## R. REQUIRED DOCUMENTATION AND DATA ENTRY

In accordance with HSB 15.03.05 Appendix #8, patients with chronic liver disease should be enrolled in Gastrointestinal Clinic (GC) with baseline information completed prior to start of treatment using DC4-770GG-Gastrointestinal Baseline History and Procedures.

Documentation of evaluation of treatment should be entered on form DC4-701F (*Chronic Illness Clinic*). The encounter should be entered in the OFFENDER-BASED INFORMATION SYSTEM (OBIS) as a GC appointment using the appropriate diagnosis code as shown below.

1. GH08 – Front Page. Add the following codes as determined:

    (a) **For Acute hepatitis C** - use ICD-10-CM Diagnosis Code **B17.1**
    (Note: Per Section E.1. above, if viremia persists at 6 months after the date of first diagnosis, continue to monitor and manage the case as a chronic infection. This requires a change in OBIS code in accordance with R.1.b. If viremia does not persist at 6 months, remove code B17.1, but continue to monitor for other health issues.)

    (b) **For Chronic viral hepatitis C** – use ICD-10-CM Diagnosis Code **B18.2**

2. GH08 – back page. Add the following action codes on the GH08 Back page (contact screen):

    (a) **DAA** = HepC Tx Started
        1. Enter start date – Required Field
    (b) **DAAx** = HepC Tx Discontinued

Exhibit- Q.4

HEALTH SERVICES Bulletin 15 03.09

A.(7) and
A.(8.)

## MANAGEMENT OF HEPATITIS C

This guideline describes departmental recommendations for the screening, evaluation, treatment, and monitoring of patients infected with hepatitis C virus (HCV).

## A.  GENERAL INFORMATION REGARDING HEPATITIS C

1.  Hepatitis C is a liver disease caused by the hepatitis C virus (HCV) which is found in the blood of persons who have this disease.  HCV is spread by contact with the blood of an infected person.

2.  Risk factors for infection may include, but are not limited to, injection drug use, transfusion with HCV-infected blood or blood products, tattooing, vertical transmission from mother to child, and massive exposure to HCV-infected blood during fighting or other trauma.

3.  The average incubation period is six to nine weeks, with a range from two weeks to six months.  Therefore, acute HCV infection usually is established within 3-6 months of the contact with the infected blood.

4.  Those individuals who spontaneously clear hepatitis C usually do so within the first six months of being infected.  Many patients have no symptoms of acute hepatitis.

5.  Approximately 50-80% of individuals infected with hepatitis C will not spontaneously clear the virus.  For them, the infection becomes chronic.

6.  Chronic hepatitis C (sometimes abbreviated as "cHCV") is characterized by the persistent presence of HCV-RNA detectable in blood/serum, i.e., the HCV viral load (HCV-VL).  Those patients who are HCV-VL+ in the context of the correctional setting usually have chronic HCV disease.

7.  The principal consequence of cHCV is infection of the liver, which causes inflammation that may, in turn, result in scarring of the liver, which is known as "fibrosis."  The amount of liver scarring a patient has is usually measured on the METAVIR scale.  On this scale, a person can be classified as F0 (inflammation, but no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis).

8.  Liver scarring can significantly impair liver function, and can place a patient at risk for several serious symptoms/complications, as well as liver failure or liver cancer.

9.  For a depiction of the natural history of HCV, see Diagram 1, below.



Thomas A. Furman-181292
Everglades Correctional Institution
1599 S.W. 187th Avenue
Miami, Florida 33194

MAILED FROM
CORRECTIONAL
INSTITUTE

NEOPOST
12/04/2018
US POSTAGE $007.30
ZIP 33194
041M11291623

CHECKED DEC 12 2018

RECEIVED
EVERGLADES C.I.
DEC 03 2018
STAFF INITIALS

Royal Palms P&DC
FRI 07 DEC 2018 AM

Clerk of Court
U.S. District Court
Northern District of Florida
111 North Adams St. ste, 322
Tallahassee, Florida 32301-7717