**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**THOMAS A. FURMAN,**

     **Plaintiff,**

**vs.**                                    **Case No. 4:16cv214-MW/CAS**

**DR. HIPOLITO MATOS, et al.,**

     **Defendants.**
**_____/**

## SECOND REPORT AND RECOMMENDATION

The pro se Plaintiff brought this civil rights action to challenge the denial of medical care by prison officials after he was diagnosed with the Hepatitis C Virus [HCV]. After service of Plaintiff's second amended complaint, ECF No. 12, a motion to dismiss was filed by Defendant Cherry, ECF No. 60, and a separate motion to dismiss was filed by Defendant Harvey, ECF No. 67. A Report and Recommendation was entered, ECF No. 100, and adopted, ECF No. 107, and Plaintiff's motion for preliminary injunction, ECF No. 96, was denied, Defendant Harvey's motion was granted, and Defendant Cherry's motion was granted in part as to the official capacity claim for monetary damages. ECF No. 107. The case

proceeded through discovery on Plaintiff's surviving claims brought against Defendants Cherry, Matos, and Reimers (who was substituted for named Defendant Dr. Olugbenga Ogunsanwo, *see* ECF No. 65).

This case was, however, stayed pending resolution of a related case, *Hoffer v. Inch*.[1]  *See* ECF Nos. 130, 142.  It was initially thought that resolution of the *Hoffer* case would render this case moot.  *See* ECF Nos. 125, 130.  However, further consideration revealed that it was no longer necessary to stay this case pending the ultimate resolution of *Hoffer* as Plaintiff's request for damages would not be moot.  ECF No. 142.  Thus, the stay was lifted in late October 2018, ECF No. 142, and Plaintiff filed a motion for summary judgment in December 2018.  ECF No. 144. Defendant Reimers filed a motion for summary judgment on April 16, 2019, ECF No. 152, and Defendant Cherry filed his motion on April 30, 2019, ECF No. 154.  Plaintiff was released from the custody of the Department of Corrections on May 10, 2019.  *See* ECF No. 161.  Additional time was provided so Plaintiff could file an amended response to the pending

---

[1]  *See* <u>Hoffer v. Inch</u>, 382 F. Supp. 3d 1288 (N.D. Fla. 2019), a class action lawsuit brought by inmates in the custody of the Florida Department of Corrections who were infected with the Hepatitis C Virus and had been denied proper medical treatment. A preliminary injunction was entered in November 2017, and a permanent injunction entered on April 18, 2019.

summary judgment motion filed by Defendant Reimers and a response ot the motion filed by Defendant Cherry. *Id.*; *see also* ECF Nos. 164, 171, and 173. Plaintiff has filed a response to the motion filed by Defendant Cherry, ECF No. 169, and an amended response, ECF No. 174, to the motion filed by Defendant Reimers. The motions are ready for a ruling.

As a preliminary matter, Plaintiff's complaint requested compensatory and punitive damages, as well as injunctive relief. ECF No. 12 at 13. Plaintiff specifically sought a liver biopsy (which had been recommended by his doctors), and to be scheduled for treatment with Harvoni, a medication used in treating HCV. *Id.* However, Plaintiff's Florida prison sentence has ended and he was released from the Department's custody and extradited to Chicago on May 10, 2019. *See* ECF Nos. 161; ECF No. 174 at 2. Plaintiff is now "an inmate in the Illinois Cook County Jail." ECF No. 174 at 2. The general rule in this circuit is that "release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651, 179 L.Ed. 2d 700 (2011); *see also* Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986) (concluding that inmate's release from prison mooted claim

for declaratory and injunctive relief); McKinnon v. Talladega Cnty., 745

F.2d 1360, 1365 (11th Cir. 1984) (holding that transfer to a different jail

mooted claims for declaratory and injunctive relief but not claim for

monetary damages). "The reason for this rule is that injunctive relief is 'a

prospective remedy, intended to prevent future injuries,' ... and, as a result,

once the prisoner has been released, the court lacks the ability to grant

injunctive relief and correct the conditions of which the prisoner

complained." Smith, 502 F.3d at 1267 (internal citation omitted) (citing to

Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) (stating

that a prisoner's past exposure to sub-par conditions in a prison "does not

constitute a present case or controversy involving injunctive relief")).

Accordingly, Plaintiff's requests for injunctive relief in this are moot. *See*

Dunn v. Warden Ware State Prison, 644 F. App'x 898, 900, n.2 (11th Cir.

2016) (noting that because the prisoner was "no longer housed in either

Ware State Prison or Calhoun State Prison, his claims for injunctive relief

against the prison officials there are moot").

    Additionally, Plaintiff named Dr. Hopolito Matos as a Defendant, but

Dr. Matos was never served with process. *See* ECF Nos. 52, 63, and 65.

Plaintiff was directed to use the discovery period to locate the Defendant

Case No. 4:16cv214-MW/CAS

and file a motion requesting additional service efforts be made if he obtained an address for him.  ECF Nos. 65, 111.  The United States Marshals Service was also required to use reasonable efforts to locate that Defendant, ECF No. 116, but were unsuccessful.  ECF No. 128.  In light of the inability to locate Dr. Matos, Plaintiff was given an opportunity to advise the Court whether or not he was willing to voluntarily dismiss his claim against Dr. Matos.  ECF No. 153.  Plaintiff did not respond to that Order.  It is recommended that Plaintiff's claim against Defendant Matos be dismissed for insufficient service of process pursuant to Rule 12(b).

## I.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show[2] the court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), "only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci, 557 U.S. at 586, 129 S. Ct. at 2677).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'"

Case No. 4:16cv214-MW/CAS

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F. Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of proof) has a heavier burden on summary judgment, the Court will consider the Defendants' motions first.  If Defendants motions are denied, the Court will consider whether Plaintiff is entitled to judgment as a matter of law.

## II.   Relevant Medical Information

"Hepatitis C is an infectious disease that primarily affects the liver." Black v. Alabama Dep't of Corr., 578 F. App'x 794, 795 (11th Cir. 2014) (affirming grant of summary judgment in favor of Alabama Department of Corrections on inmate's Eighth Amendment claim of deliberate indifference).  "Although Hepatitis C often has no symptoms, chronic infection can lead to liver damage, cirrhosis, liver cancer, and liver failure." Black, 578 F. App'x at 795.  The Hepatitis C Virus is undeniably a "serious medical need."  Hoffer v. Inch, 382 F. Supp. 3d 1288, 1296 (N.D. Fla. 2019); see also Black, 578 F. App'x at 794 (finding "no dispute that Black's Hepatitis C is a serious medical need.").  A primary consequence of Hepatitis C Virus is "infection of the liver, which causes inflammation that in

turn may result in scarring of the liver (fibrosis)." Hoffer, 382 F. Supp. 3d at 1300. "[S]carring of the liver can have severe consequences." Hoffer v. Jones, 290 F. Supp. 3d 1292, 1294 (N.D. Fla. 2017). It may "significantly impair liver function and damage its crucial role in filtering toxins from the blood, as well as making proteins involved in liver clotting and fighting infections." Hoffer, 290 F. Supp. 3d at 1294. Liver scarring also increases the "risk of liver failure or liver cancer," which "is essentially untreatable." 290 F. Supp. 3d at 1294.

"The amount of liver scarring a patient has is usually measured on the METAVIR scale." 382 F. Supp. 3d at 1300. "On this scale, a person can be classified F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis)." Id. Notably, the extent of liver scarring does not necessarily correlate with a patient's symptoms. Hoffer, 290 F. Supp. 3d at 1295. A patient may be "completely asymptomatic" yet "present with cirrhosis." Id. Furthermore, symptoms have little to do with the risk of liver failure. Id.

## III.   Rule 56 evidence

In May of 2004, while incarcerated in the Florida Department of Corrections, Plaintiff was diagnosed with the Hepatitis C Virus (HCV). ECF

No. 12 at 6.[3]  Defendants acknowledge that as of March 20, 2017, Plaintiff

was identified as being part of the "approximately 5,119" inmates identified

"as having chronic HCV."  ECF No. 132 at 1.  Plaintiff identified several

physicians (none of whom are named as Defendants) who recommended

Plaintiff be given a liver biopsy and begin a treatment regimen for HCV, but

all of those recommendations were denied.[4]  ECF No. 12 at 7-8.  When

those recommendations were made and when they were denied was not

specifically alleged in the complaint, but Plaintiff reported that Defendant

Cherry, the Regional Medical Director, was "responsible for making final

---

[3] The allegations from Plaintiff's second amended complaint were sworn under penalty of perjury and may properly be considered as evidence at the summary judgment stage of litigation.  Sears v. Roberts, No. 15-15080, — F.3d —, 2019 WL 1785355, at *3 (11th Cir. Apr. 24, 2019) (citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.") and Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment)).

[4] Plaintiff alleged that Dr. Bhadja recommended Plaintiff be given a liver biopsy and begin treatment for Hepatitis, apparently in 2007, but it was denied.  ECF No. 12 at 7.  Plaintiff alleged that Dr. Geecken also recommended a liver biopsy and a treatment regimen, and Dr. Anandjiwalla concurred in that recommendation.  *Id.*  No treatment was given.  *Id.*  Plaintiff was transferred to a different institution, and Dr. Poveda recommended a liver biopsy and the start of treatment.  *Id.* at 8.  No treatment was given.  *Id.*  Dr. Alberti-Flor also recommended Plaintiff start a treatment regimen and have an ultrasound and laparoscopy.  *Id.*  Plaintiff was given an ultrasound, but no other treatment was provided.  *Id.*  It appears that all of those recommendations were made prior to March 30, 2009.  ECF No. 12 at 8.

decisions in regards to specifically recommended treatment . . . ."  *Id. at* 7-8, 12.

Plaintiff stated that the Department of Corrections' Bureau of Health Services did not provide treatment for HCV, despite the fact that the Department's own medical doctors recommended such treatment.  *Id.* at 9-10.  Plaintiff asserts that the Department was aware of Plaintiff's medical needs, but "willfully, intentionally, and deliberately withheld the treatment" which had been recommended.  *Id.* at 10.  Plaintiff states that, as a matter of policy, the Department would not begin providing HCV treatment until a prisoner's liver began showing "signs of deterioration due to the virus."  *Id.* at 11.  Plaintiff also said that treatment was denied or delayed because it was expensive.[5]  *Id.*  Instead of treatment, Plaintiff received "monitoring and assessing."  ECF No. 145 at 4 (Plaintiff's affidavit); *see also* ECF No. 144 at 30.

---

[5] Additionally, Plaintiff's amended response to Defendant Reimers' summary judgment motion points to findings made in the <u>Hoffer</u> case that treatment was not provided due to lack of funding.  ECF No. 174 at 20; *see also* <u>Hoffer</u>, 290 F. Supp. 3d at 1298 (explaining that "Mr. Reimers, the FDC administrator responsible for overseeing the contractors, recognized that inmates with HCV were not being treated and found the lack of treatment to be unacceptable").  "Again, the reason why inmates weren't being treated was because of a lack of funding."  290 F. Supp. 3d at 1298.

Defendants provided a "status report" in this case on April 16, 2018,[6] which advised that pursuant to the mandates of the class action lawsuit *Hoffer v. Jones,* over twenty-one thousand inmates had been screened for HCV.  ECF No. 132 at 1.  Of those, "approximately 5,119" inmates were identified as having chronic HCV, including Plaintiff.  *Id.*  That status report stated that "Plaintiff's labs dated January 16, 2018, were normal, his liver appeared to be normal and no splenic enlargment was evident."  *Id.*  An additional test would be "performed in the near future to determine" Plaintiff's status as either F1, F2, F3, and the like.  *Id.* at 2.  The report concluded by advising that if Plaintiff were determined to be "an F3 patient, he [would] be treated by December 2018."  *Id.*

Plaintiff filed an objection to that status report, ECF No. 136, arguing that the report was misleading and presented "fabricated information."  *Id.* at 4.  Plaintiff attached a copy of his lab report which was dated January 19, 2018,[7] to his objection.  ECF No. 136 at 13.  According to that report, Plaintiff's "fibrosis score" was 0.67, which put him in the F3 category, or

---

[6] Federal Rule of Civil Procedure 56(c)(3) provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record."

[7] The report was dated January 19, 2018, and the lab samples were taken on January 17, 2018.  ECF No. 136 at 13.

"advanced fibrosis," in the METAVIR scoring.  *Id.*  Indeed, considering that

the F3 category is between 0.59 - 0.72, Plaintiff's score was at "the upper

end" and nearing the F4 or "severe fibrosis" category.  *Id.* at 5, 13.  Thus,

contrary to Defendants' status report, ECF No. 132, Plaintiff's labs were not

"normal" as demonstrated by the medical record.  Plaintiff also submitted a

copy of his abdominal ultrasound report dated February 2, 2018.  ECF No.

136 at 14.  The conclusion reached was "fatty infiltration of the liver."  *Id.*

Defendants filed another status report on July 9, 2018.  ECF No. 137.

That report did not include any copies of Plaintiff's medical records, but

asserted that "as of July 6, 2018, Plaintiff continues to be at the F2 stage

and is scheduled to be treated next calendar year, by December 2019."  *Id.*

at 2.  Again, the report advised that F3 stage inmates were "presently being

treated" and such treatment would be completed by December 2018.  *Id.*

Once again, Plaintiff filed an objection, ECF No. 138, pointing out that

in January 2018, he "underwent a series of bloodwork tests and an

ultrasound."  *Id.* at 1.  He provided another copy of those results to show

that he was not at the F2 stage as stated by Defendants and he questioned

when he was ever "diagnosed at that stage."  *Id.* at 7, 17.  Plaintiff's

evidence showed he was "at the Firbosis-F3 advanced stage but [was] not being treated for reasons unknown." *Id.* at 10, 13, and 17.[8]

Defendants' next status report was filed on September 25, 2018. ECF No. 140. This report advised that the preliminary injunction entered in the *Hoffer* case had been renewed on September 11, 2018. Pursuant to *Hoffer's* treatment plan, inmates at the F3 stage were to receive treatment by December 2018. *Id.* at 2. The report stated that "[b]ecause Plaintiff progressed from the F2 stage to the F3 stage, Plaintiff began taking Zepatier for the treatment of the Hepatitis C virus on August 17, 2018." *Id.*

Plaintiff confirmed that he received the initial dose of the Zepatier treatment regimen on August 17, 2018. ECF No. 141 at 3. Plaintiff said that he was to receive one tablet per day for twelve weeks, and the treatment was to conclude in November 2018. *Id.* at 3-4. The evidence reveals that "Plaintiff completed the treatment regimen on November 8, 2018." ECF No. 147-1 at 2; ECF No. 150 at 19. A "final prognosis" is not determined until three months after treatment is completed. *Id.*

---

[8] Plaintiff's objection, ECF No. 138, and his "status update," ECF No. 141, were filed as sworn statements under penalty of perjury.

Plaintiff submitted another lab report dated December 3, 2018, which tested a sample obtained on November 29, 2018.  ECF No. 150 at 10.  According to that report, Plaintiff's fibrosis score had decreased from 0.67 in January 2018 to 0.64.  *Cf.* ECF No. 138 at 17, ECF No. 150 at 10.  Yet Plaintiff was still listed at the F3, advanced fibrosis stage.  *Id.*

Additional lab work was submitted on May 6, 2019.  ECF No. 155.  The report concerns a lab sample taken from late February 2019, after Plaintiff had completed treatment.  *Id.*  A declaration submitted by Dr. John P. Lay, Jr., interpreted that report and advised that Plaintiff's HCV "viral load" was "not detected."  ECF No. 154-1 at 2; *see also* ECF No. 155 at 2.  Dr. Lay states that if "Hepatitis-C is undetectable, then the patient is considered to have a sustained viral response, and is considered to be cured."  *Id.* at 2-3.  Dr. Lay states that he reviewed Plaintiff's laboratory results and imaging studies.  *Id.* at 3.  Dr. Lay declares that Plaintiff "has not suffered any physical injuries resulting from the time he suffered from Hepatitis-C."  *Id.*

An additional declaration was submitted by Dr. Timothy Whalen[9] who stated that additional lab work would be taken on May 8, 2019, at Plaintiff's "six-month follow-up" to "confirm that his viral load is undetectable."[10]  ECF No. 152-2 at 2.  Dr. Whalen states that treatment for HCV "has proven to be 98% to 99% effective while incarcerated."  *Id.*  "So long as [Plaintiff] does not consume drugs or alcohol and takes proper care of himself going forward, his long-term prognosis is very good."  *Id.*; *see also* ECF No. 154-1 at 3.

Dr. Lay also concurred with testimony elicited in the *Hoffer* case that "patients at F0 and F1 are considered stable."  ECF No. 152-2 at 2.  He advised that "[s]uch patients are not at substantial risk of serious harm."  *Id.*  Dr. Lay said that such patients can be monitored for disease progression and treated if "they reach the F2 and F4 stages."  *Id.*

## IV.  Analysis

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in

---

[9] Dr. Whalen also stated in his declaration that Plaintiff "was only at the very beginning stages of F3 when he began receiving treatment with Zepatier on August 17, 2018."  ECF No. 152-2 at 2, ¶d.

[10] It is unknown whether the additional lab work was taken.

prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128

L.Ed.2d 811 (1994).  The Eighth Amendment guarantees that prisoners will

not be "deprive[d] ... of the minimal civilized measure of life's necessities."

Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69

L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289

(11th Cir. 2004)).  Those "necessities include food, clothing, shelter,

sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d

1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452

F. App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates

the Eighth Amendment's prohibition against cruel and unusual punishment.

Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A

serious medical need is 'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention."  Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in

Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of

these situations, the medical need must be 'one that, if left unattended,

'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1243

(citation omitted); *see also* <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291,

1307 (11th Cir. 2009).  Alternatively, "a serious medical need is determined

by whether a delay in treating the need worsens the condition" or "if left

unattended, poses a substantial risk of serious harm." <u>Mann v. Taser

Intern., Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

There is no dispute in this case that Plaintiff's HCV condition is a serious

medical need.

Deliberate indifference to such a medical need requires more than

negligence,[11] but it is unnecessary to show a defendant intended to cause

harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128

L. Ed. 2d 811 (1994).  Deliberate indifference requires a plaintiff to show

that a defendant was subjectively reckless and consciously disregarded a

substantial risk of serious harm. <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct.

2321, 115 L. Ed. 2d 271 (1991) (explained in <u>Farmer</u>, 511 U.S. at 838-40,

114 S. Ct. at 1979-80).  "The inadvertent or negligent failure to provide

adequate medical care 'cannot be said to constitute 'an unnecessary and

---

[11] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." <u>Bingham</u>, 654 F.3d at 1176 (citing <u>Brown v. Johnson</u>, 387 F.3d 1344, 1451 (11th Cir. 2004)).

wanton infliction of pain.'"  Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243).

Thus, after showing an objectively serious medical need, a plaintiff must show "an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243.  Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'"  Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

 "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the

prison's medical staff and the inmate as to the latter's diagnosis or course

of treatment support a claim of cruel and unusual punishment."  Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989)).  "A 'complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment.'"

Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at

1176).  For example, the prisoner in Estelle received treatment for his back

injury, but complained that more should have been done in the way of

diagnosis.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic
> techniques or forms of treatment--is indicated is a classic
> example of a matter for medical judgment.  A medical decision
> not to order an X-ray, or like measures, does not represent
> cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Put simply, an "official acts with

deliberate indifference when he or she knows that an inmate is in serious

need of medical care, but he fails or refuses to obtain medical treatment for

the inmate."  McElligott, 182 F.3d at 1255 (citations omitted).  In this case,

the dispute is not between Plaintiff and his medical providers and does not

concern a "simple difference" of opinion.  The evidence reveals that such

treatment was recommended by Plaintiff's doctors and Plaintiff desired to have treatment, but the treatment recommendations were denied.

Moreover, it has been well established that denying or delaying medical care for non-medical reasons, such as lack of funds, is deliberate indifference.  Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 705 (11th Cir. 1985); Fields v. Corizon Health, Inc., 490 F. App'x 174, 184-85 (11th Cir. 2012).  A lack of funds "will not excuse the failure of correctional systems to maintain a certain minimum level of medical service necessary to avoid the imposition of cruel and unusual punishment."  Harris, 941 F.2d at 1509.  Judicial notice is taken of the testimony established in *Hoffer* concerning this issue, "the reason why inmates weren't being treated was because of a lack of funding."  290 F. Supp. 3d at 1298.  Requests for funding were not approved by the Department for the 2015-2016 fiscal year, or the 2017-2018 fiscal year.  *Id.* at 1298.

The evidence in this case shows that Plaintiff was not provided with any medical treatment for Hepatitis-C for approximately fourteen years.  He was diagnosed with HCV in March of 2004, but did not receive any treatment until August 17, 2018.  It is unknown exactly when treatment was required because there is no evidence as to when Plaintiff reached the F2

level.  Notably, Defendants' April 2018 status report sought to convey that

Plaintiff's January 2018 lab work was "normal."  ECF No. 132.  That was

not correct, however.  Plaintiff's lab work dated January 19, 2018, showed

he was already at the F3 stage.  *See* ECF No. 136 at 13.  Defendants then

sought to convey that Plaintiff was at "the F2 stage" as late as July 2018.

ECF No. 137.  Yet that report is contradicted by Plaintiff's January 2018 lab

report showing a FibroTest score of 0.67.  To make such an incorrect

assertion more than once, and after Plaintiff filed an objection and

submitted the relevant lab report, *see* ECF No. 136, is not taken lightly.

The assertion was wrong.  Moreover, it was reiterated in the declaration

submitted by Dr. Whalen.  ECF No. 152-2 at 2.  Plaintiff's labwork form

January 16, 2018, was not normal and it did not take several more months

for Plaintiff to progress to the F3 stage.  *Id.*

Defendants' evidence is troubling.  To misconstrue the evidence and

suggest that Plaintiff was fine and his lab work was "normal" is

demonstrative of the indifference shown to Plaintiff over the years by the

Department of Corrections.  HCV is not a condition that can be "left

attended" without posing a substantial risk of harm.  The lack of funding to

provide necessary and life saving treatment is not an excuse to fail to

comply with the requirements of the Eighth Amendment.  Plaintiff's Eighth

Amendment rights were violated.

Notwithstanding that conclusion, pursuant to the injunction entered by

this Court in *Hoffer*, Plaintiff finally began receiving treatment on August 17,

2018.  He was treated with Zepatier through November 8, 2018, and the

only evidence submitted after treatment was provided indicates Plaintiff has

been cured.  There is no evidence that the virus is detectable at this point

in time.

Furthermore, Plaintiff has not provided any medical evidence

showing that he has suffered physical harm as a result of the delayed

treatment.  There is no evidence to demonstrate the level of fibrosis or

harm to Plaintiff's liver.  There is no question that one diagnosed with HCV

who is unable to receive doctor-recommended treatment would suffer

mentally and emotionally.  Yet Plaintiff has not come forward with any

evidence to reveal physical injury due to the delay in receiving treatment.

The only evidence before this Court is that Plaintiff has been cured.

Pursuant to 42 U.S.C. § 1997e(e), a prisoner who has not suffered

more than de minimis physical injury, or suffered only emotional injury,

cannot recover either compensatory or punitive damages.  Al-Amin v.

Smith, 637 F.3d 1192, 1199 (11th Cir. 2011); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007).  Thus, Plaintiff is not entitled to an award of either punitive or compensatory damages as requested,[12] despite the conclusion that his constitutional rights were violated.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the claim against Defendant Matos be **DISMISSED**, that Plaintiff's motion for summary judgment, ECF No. 144, be **GRANTED** to the extent Plaintiff has shown that his constitutional rights were violated, that Defendant Reimers' motion for summary judgment, ECF No. 152, be **DENIED**, and Defendant Cherry's motion for summary judgment, ECF No. 154, be **DENIED**.  Notwithstanding that judgment should be entered in Plaintiff's favor, Plaintiff is not entitled to an award of compensatory or punitive damages.

**IN CHAMBERS** at Tallahassee, Florida, on August 21, 2019.

S/    Charles A. Stampelos
**UNITED STATES MAGISTRATE JUDGE**

---

[12]  Defendant Reimers asserted Eleventh Amendment immunity in the summary judgment motion.  ECF No. 152 at 8.  Because Plaintiff is not entitled to an award of monetary damages, addressing the immunity defense is not necessary.  Notably, the official capacity claim brought against Defendant Cherry was previously dismissed, finding he was entitled to Eleventh Amendment immunity.  ECF Nos. 100, 107.

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**